**Jonathon L. HAMRICK, by his next friend, Janet HAMRICK, Appellant,**

v.

**AFFTON SCHOOL DISTRICT BOARD OF EDUCATION, Respondent.**

**No. ED 76275.**

Missouri Court of Appeals,
Eastern District,
Division Seven.

March 7, 2000.

William, P. Grant, Diane M. Monahan, St. Louis, for appellant.

Charles L. Ford, Sandra A. Padgett, St. Louis, for respondent.

WILLIAM H. CRANDALL, Jr., Judge.

Appellant, Jonathon Hamrick, by and through his next friend, Janet Hamrick, (hereinafter both collectively referred to as Jonathon) appeals from the judgment of the trial court upholding the decision of respondent, Affton School District Board of Education, denying him enrollment. We reverse.

Jonathon was born in October 1984. Prior to February 1, 1998, he was enrolled in a Catholic parochial elementary school operated by Seven Holy Founders Parish (hereinafter parochial school). In December 1997 and January 1998, he committed acts of burglary, stealing, and property damage on the premises of the parochial school. He perpetrated the acts with another person, who was a student enrolled in Affton School District.

The parochial school expelled Jonathon. Jonathon requested enrollment in Affton School District, the public school district in which he resided. In September 1998, the Affton School District Board of Education (hereinafter Board) held a hearing for the purpose of determining whether Jonathon would be permitted to enroll as a student.

After the hearing, the Board informed Jonathon by letter that it was denying him enrollment in Affton School District based on the following findings:

[I]f Jonathon had committed the same acts of property damage, burglary and stealing, in the Affton School District, which he committed at Seven Holy Founders, he would have been expelled from the Affton School District. Based upon this finding, the Affton Board of Education is making the expulsion from Seven Holy Founders effective in the Affton School District.

Jonathon brought the present action, seeking review of the Board's decision. The trial court upheld the Board's decision, finding that it was supported by competent and substantial evidence. Jonathon appeals.

■ The salient issue on appeal, contained in Jonathon's first point, is whether the Board erred in applying section 167.171.4, RSMo (Cum.Supp.1998) of the so-called "Safe Schools Act" when it denied Jonathon enrollment in Affton School District. Jonathon argues the statute was not applicable to him because he was expelled from a non-public school, not from a "school district" within the plain and ordinary meaning of the statute. Section 167.171.4 provides in relevant part:

If a pupil is attempting to enroll in a school district during a suspension or expulsion from *another school district*, a conference . . . may be held . . . to consider if the conduct of the pupil would have resulted in a suspension or expulsion in the district in which the pupil is enrolling. Upon a determination . . . that such conduct would have resulted in a suspension or expulsion in the district in which the pupil is enrolling or attempting to enroll, the school district may make such suspension or expulsion from *another district* effective in the district in which the pupil is enrolling or attempting to enroll.

(Emphasis added).

■ This court reviews the findings and conclusions of the board of education, an administrative agency, rather than the judgment of the circuit court. *Soward v. Mahan*, 926 S.W.2d 138, 141 (Mo.App. E.D.1996). The issue of whether the board complied with the requirements of the statute is a question of law, and we review under Rule 73.01 as interpreted in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). This court will affirm the decision of the board unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d at 32.

■ The primary rule of statutory construction requires courts to ascertain the intent of the legislature by considering the plain and ordinary meaning of the words used in the statute. *Soward*, 926 S.W.2d at 142. We must construe the statute in light of the purposes the legislature intended to accomplish and the evils it intended to cure. *Id.* Courts should avoid interpretations that are unjust, absurd, or unreasonable. *Id.*

Section 167.171.4 is contained in Chapter 167, entitled "Pupils and Special Services," but there is no definition of school district contained in that chapter. The statute, however, is part of Title XI, entitled "Education and Libraries," which provides definitions of terms applicable to Chapter 167. Under Title XI, "district" or "school district" is defined as "when used alone, may include seven-director, urban, and metropolitan school districts." Section 160.011(1), RSMo (Cum.Supp.1998). The Board contends the statute includes a non-public school within the definition of school district because use of the term "may" in the statute implies alternatives other than the three types of districts specifically listed in the statute. In addition, the Board argues that the legislature's failure to use the word "public" before school district in section 167.171.4 manifests its intent to include a non-public school.

We disagree. "When statutory language is clear, courts must give effect to the language as written." *State ex rel. Baumruk v. Belt,* 964 S.W.2d 443, 446 (Mo. banc 1998) (quoting *M.A.B.v. Nicely,* 909 S.W.2d 669, 672 (Mo. banc 1995)). Webster's Third New International Dictionary (1981) defines school district as "an area within a state sometimes coinciding with a township but having its own board and power of taxation and serving as the smallest unit for administration of a public-school system." In addition, Missouri case law defines school district as "a 'public corporation' forming an integral part of the State and constituting that instrumentality of the State utilized by the State in discharging its constitutionally invoked governmental function of imparting knowledge to the State's youth." *Kansas City v. School Dist. of Kansas City,* 356 Mo. 364, 201 S.W.2d 930, 933 (1947). Although the *Kansas City* decision is not controlling because the case did not involve the interpretation of the meaning of school district as used in Chapter 167 or in Title XI, we view the decision as instructive in interpreting the meaning of "school district." The definitions from the dictionary and from case law clearly indicate the public nature of a school district.

Thus, "school district," as the legislature intended it to mean in section 167.171.4, pertains only to a public, and not a non-public, entity. This interpretation reflects the plain and ordinary meaning of the phrase "school district." Thus, in accordance with this interpretation, under section 167.171.4, the school district in which the student is attempting to enroll may make effective in its district only an expulsion from another public school district and not an expulsion from a non-public school.

This interpretation of legislative intent is reasonable for other reasons. It insures that before a school district makes effective an expulsion from another school district, the expulsion from the other district was accomplished in conformity with sec-tion 167.161, RSMo (Cum.Supp.1998) and its due process guarantees. Also, had the legislature intended section 167.171.4 to apply to non-public schools, it could have used the phrase "another school" in place of "another school district" in the statute.

The Board erred in applying section 167.171.4 to deny Jonathon enrollment in Affton School District because he was expelled from a non-public, parochial school and not from "another school district." Jonathon's first point is granted.

In view of our holding under point one, we need not address Jonathon's second point on appeal regarding whether the Board's denial of enrollment to him was arbitrary and capricious in light of its failure to expel his accomplice who remained enrolled as a student in Affton School District.

The judgment is reversed.

MARY RHODES RUSSELL, Chief Judge: Concurs in result only by separate opinion.

RICHARD B. TEITELMAN, Judge: Concurs.

MARY RHODES RUSSELL, Chief Judge, concurring in result only..

I concur in result only. Although I believe the Affton School District Board of Education ("Affton") correctly applied the Safe Schools Act, section 167.171.4 RSMo (Cum.Supp.1998), I would reverse Affton's decision, as I believe its decision to deny enrollment to Jonathon while not expelling his accomplice was arbitrary, capricious, and unreasonable.

In recent years our nation has witnessed a plethora of violent acts within our schools, often committed by students. The Safe Schools Act is an obvious attempt by the Missouri legislature to protect our young people and school personnel. With this purpose in mind, we turn to the statute at issue, section 167.171.4, which provides in pertinent part:

682

If a pupil is attempting to enroll in a school district during a suspension or expulsion from another school district, a conference ... may be held ... to consider if the conduct of the pupil would have resulted in a suspension or expulsion in the district in which the pupil is enrolling. Upon a determination ... that such conduct would have resulted in a suspension or expulsion in the district in which the pupil is enrolling or attempting to enroll, the school district may make such suspension or expulsion from another district effective in the district in which the pupil is enrolling or attempting to enroll.

We first review if Affton correctly applied section 167.171.4. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). No one disputes Affton is clearly a "school district" within the meaning of section 160.011(1), as it is a seven-director public school. Thus, a public school's denial of enrollment is the action we are addressing, not the action of a private school.

The intent behind the Safe Schools Act is to protect our public schools. If the statute provided that a public school could deny enrollment to a student expelled from only other public schools, it would make no sense. The public school where a student is seeking enrollment determines whether the student's conduct would have resulted in expulsion from its district, regardless of what type of school the student was previously enrolled. For these reasons, I would affirm Affton's decision to apply section 167.171.4, as it correctly applied the law.

I would reverse Affton's decision to deny Jonathon enrollment under his point II, however, as arbitrary, capricious, and unreasonable. Jonathon committed acts of property damage, burglary, and theft against the private school where he was enrolled. Affton refused enrollment to Jonathon based upon its determination that his conduct would have resulted in expulsion in Affton if he had committed the same acts on *Affton's school grounds*. Jonathon's accomplice, however, who was en-

rolled in Affton at the time the acts were committed, was not expelled from Affton, as the acts were not committed against Affton.

Affton maintains that under its interpretation of Missouri statutes and its Student Discipline Guidelines, it was not allowed to suspend or expel a currently enrolled student for committing property damage, burglary, and theft when the acts were not committed on Affton grounds.

Affton's interpretation is in error, as the statute does not distinguish *where* the conduct in question occurred. According to the terms of the statute, a school district may examine the enrolling student's conduct and determine whether the student would have been expelled if he were already enrolled in the district.

Further, section 167.161.1 states that the "school board of any district ... may suspend or expel a pupil for conduct which is prejudicial to good order and discipline in the schools or which tends to impair the morale or good conduct of pupils." Affton's Guidelines provide for expulsion for acts "which result in violence to another's person or property...." Neither the statute nor the Guidelines place any geographical limitation on the pupil's conduct. In addition, it is certainly reasonable to conclude that committing felonious acts of burglary, theft, and vandalism against a school constitutes conduct which is prejudicial to good order and discipline and tends to impair the morale or good conduct of students.

While a school board does possess much discretion in matters of school management, our court is instructed to determine whether its decision was arbitrary, capricious, or unreasonable. *See Clark v. School Dist. of Kansas City*, 915 S.W.2d 766, 773 (Mo.App.1996). To allow one student continued enrollment while denying enrollment to another student, when both students were cohorts in the same conduct, is arbitrary. Further, to distinguish that burglary, theft, and vandalism committed

against a student's own school is more egregious than committing the acts against another school is also unreasonable. Under these circumstances, I would reverse the school board's decision under point II.