Bonnie BENOIT, Arnella Lewis, Melanie Hartland, Terrilyn Halford, Kimberly Young, Rebecca Statesel, and Craig Hartland, Individually, and as Next Friend of Travis Hartland and Sarah Hartland, Respondents/Cross–Appellants,

v.

MISSOURI HIGHWAY AND TRANSPORTATION COMMISSION, Appellant/Respondent,

and

Shawn Baker, Defendant.

Nos. 23088, 23103.

Missouri Court of Appeals,
Southern District,
Division One.

Nov. 21, 2000.

Motion for Rehearing or Transfer Denied
Dec. 13, 2000.

Application for Transfer Denied
Jan. 23, 2001.

Zachary T. Cartwright, Senior Litigation Counsel, John W. Koenig, Jr., Dist. Counsel, Rich Tiemeyer, Chief Counsel, Jefferson City, for Appellant/Respondent.

Steve Garner, Neil Chanter, The Strong Law Firm, P.C., Springfield, for Respondents/Cross Appellants.

MONTGOMERY, Judge.

These appeals arise from a case where two vehicles collided on September 7, 1995, on U.S. Highway 60 two miles east of the Shannon/Carter County line. The plaintiffs are the surviving spouse and children of Abney Benoit and the parents and next friend of Travis Hartland, a minor. The defendants are the Missouri Highway and Transportation Commission (MHTC) and Shawn Baker.

The accident occurred when Baker's eastbound 1991 Ford Ranger pickup collided with the westbound 1986 Dodge Diplomat operated by Abney Benoit. After Baker lost control of his vehicle rounding a curve on wet pavement, his vehicle slid across the centerline into the path of the Benoit vehicle. Baker told the investigating trooper at the scene that he was traveling 55 miles per hour, the speed limit, when he began to slide. His trial testimony mirrored his statement to the trooper. MHTC attributes no fault to Benoit in causing the accident. Benoit died as a result of the accident, and Travis Hartland suffered serious injuries.

After a lengthy trial, the jury returned a verdict of $500,000 for the wrongful death of Benoit and $300,000 for the personal

injuries of Hartland. The jury assessed MHTC with 75 percent fault and Baker with 25 percent fault. Judgment was entered on May 4, 1999, in accordance with the jury verdict. Thereafter, MHTC moved to limit each judgment award to $100,000 as provided in § 537.610.2.[1] Plaintiffs also moved to add postjudgment interest to the judgment. The trial court granted the motion of MHTC but denied Plaintiffs' motion.

MHTC and Plaintiffs appeal. Plaintiffs only seek review of the trial court's ruling on the issue of postjudgment interest. We consolidated the appeals.

### MHTC's Appeal No. 23088

MHTC's first of four points relied on alleges the trial court erred in denying its motions for directed verdict and for judgment notwithstanding the verdict. MHTC claims that Plaintiffs failed to prove a breach of duty and failed to make a submissible case under § 537.600 because Plaintiffs' proof did not show a dangerous condition of the highway or that the accident directly resulted from such condition.

Our review of the denial of a defendant's request for a directed verdict is limited to a determination of whether plaintiff presented substantial evidence to prove the facts essential to the claim. *Emerson Elec. Co. v. Crawford & Co.*, 963 S.W.2d 268, 272 (Mo.App.1997). The facts are viewed in the light most favorable to plaintiff. *Id.* If reasonable minds could differ on the facts, the issue is for the jury to decide, and a directed verdict is improper. *Id.*

"The standard of review of a trial court's denial of a motion for judgment notwithstanding the verdict is whether the plaintiff made a submissible case." *Brown v. Hamilton Ins. Co.*, 956 S.W.2d 417, 419 (Mo.App.1997). "To make a submissible case, a plaintiff must present substantial evidence to support each element of [the] claim and we must view the evidence in

the light most favorable to the party who obtained the verdict." *Id.* In deciding whether a submissible case is made, a plaintiff is entitled to all reasonable favorable inferences from the evidence, and we must disregard defendant's evidence except as it may aid the plaintiff's case. *Klugesherz v. American Honda Motor Co.*, 929 S.W.2d 811, 813 (Mo.App.1996).

Finally, only the jury may judge the credibility of witnesses and the weight and value of their testimony. *Fields v. Mitch Crawford's Holiday Motors*, 947 S.W.2d 818, 821 (Mo.App.1997). A jury can believe or disbelieve any part of a witness's testimony. *Id.*

Under § 537.600.1(2), sovereign immunity is waived for injuries caused by the dangerous condition of a public entity's property. *Kanagawa v. State ex rel. Freeman*, 685 S.W.2d 831, 834 (Mo. banc 1985). A plaintiff seeking to state a claim under the aforesaid provision must show: "(1) a dangerous condition of the property; (2) that the plaintiff's injuries directly resulted from the dangerous condition; (3) that the dangerous condition created a reasonably foreseeable risk of harm of the kind the plaintiff incurred; and (4) that a public employee negligently created the condition or that the public entity had actual or constructive notice of the dangerous condition." *Id.* at 835.

A "dangerous condition" refers to defects in the physical condition of a public entity's property. *State ex rel. City of Marston v. Mann*, 921 S.W.2d 100, 102 (Mo.App.1996). Plaintiffs submitted on a theory that the road surface in the accident curve failed to provide adequate skid resistance when wet for vehicles traveling through the curve at reasonably anticipated speeds.

MHTC first discusses the duty it owes to travelers on Missouri highways. We agree that MHTC and other public entities have a duty to exercise ordinary

---

1. Statutory references are to RSMo 1994, unless otherwise indicated.

care in maintaining public roads in a reasonably safe condition for travelers using the roads in the proper manner and with due care. *See Ashlock v. City of Herculaneum,* 670 S.W.2d 131, 132 (Mo.App.1984); *Williams v. City of Independence,* 931 S.W.2d 894, 896 (Mo.App.1996). Certainly we agree that a public entity does not have "a duty to protect against all possible injuries, just those that are reasonably foreseeable." *Id.*

Whether a duty exists is a question of law. *Rothwell v. West Central Elec. Coop.,* 845 S.W.2d 42, 43 (Mo.App. 1992). In determining whether a "duty exists in a particular case, a court must weigh the foreseeability of the injury, the likelihood of the injury, the magnitude of the burden of guarding against it and the consequences of placing that burden on the defendant." *Id.*

MHTC seems to argue that it has no duty to make Highway 60 safe for unsafe drivers like Shawn Baker. This argument is based on MHTC's evidence which contradicts Baker's testimony that he was not exceeding the speed limit of 55 miles per hour. MHTC points to the testimony of William Burris, an eyewitness to the accident, who stated that Baker was "driving fast" and "exceeding the speed limit." Also, MHTC's accident reconstruction expert witness, James Lock, testified that Baker was traveling 73 miles per hour when he entered the curve.

Under our standard of review, we must disregard MHTC's evidence that Baker was speeding. Therefore, we must conclude that MHTC had a duty to safely maintain the roadway curve with proper skid resistance when wet for vehicles traveling at reasonably anticipated speeds. MHTC does not argue that the speed limit of 55 miles an hour is not a reasonably anticipated speed.

MHTC's "dangerous condition" argument varies little from its "no duty" argument. MHTC summarizes its position by stating that "[Plaintiffs] will likely point out that the speed limit on Route 60 was 55 mph and Shawn Baker claimed that he was not exceeding that speed. Thus, if we accept that testimony as true and disregard all of the other evidence, the case was arguably submissible. However, this Court is not required to accept as true that which is entirely unreasonable." MHTC cites no authority for the "entirely unreasonable" exception to our standard of review.

In *Foster v. Farmers Ins. Co., Inc.,* 775 S.W.2d 143 (Mo. banc 1989), the Supreme Court said that "evidence, however improbable, must not be withdrawn from the jury unless it appears to be so clearly and irrefutably impossible that reasonable minds cannot entertain any other conclusion." *Id.* at 145. Therefore, we must determine if Plaintiffs' evidence in this case is so "irrefutably impossible" that reasonable minds could not reach any other conclusion. We do not attempt to judge whether Plaintiffs' evidence was "entirely unreasonable."

According to MHTC, the laws of physics dictate that if poor pavement friction caused Baker to lose control at 55 miles per hour, then every other driver negotiating the curve at that speed and under the same conditions would also lose control of their vehicle. MHTC points out that between August 20, 1994, and the accident on September 5, 1995, no other accidents occurred on this curve even though 700,000 eastbound vehicles successfully traversed the curve in sometimes worse conditions than just wet pavement.

At first glance, this argument seems plausible. However, the argument fails after a careful reading of *Foster.* The plaintiff in *Foster* was the only witness at trial. 775 S.W.2d at 144. She testified that she was walking north on the west shoulder of a street in Blue Springs, Missouri. The street was paved, two lanes wide, with two-way traffic and gravel shoulders five to seven feet wide. Plaintiff could see 200 yards in front of her. The tailgate of a southbound pickup truck

struck and injured plaintiff's shoulder as she was walking approximately one foot from the pavement. Plaintiff testified that she did not step onto the pavement, that she did not see the pickup truck move off the pavement, that nothing protruded from the truck, and that when the front of the truck passed her, it was only six inches off her right shoulder.

On appeal, defendant argued that the accident was an impossibility under the facts related by plaintiff. *Id.* at 145. In answering this contention, the Supreme Court said:

> [P]laintiff's evidence indicates that for the accident to have occurred as she related it, the rear of the truck need only have moved over six inches in the time it took to pass her. Such an occurrence may seem unlikely, but it is not clearly opposed to physical law.

*Id.* Although plaintiff's testimony appeared improbable, the Court said that her credibility was for the jury since she testified to facts not "impossible." *Id.*

Here, Baker testified he slid on wet pavement across the centerline of the curve while traveling the speed limit. MHTC has not demonstrated to us that those facts are impossible. Certainly, Baker's testimony does not "seem unlikely" to the same extent as plaintiff's testimony in *Foster*. Therefore, according to *Foster*, Baker's credibility was a jury matter as to whether his testimony was improbable or not. Having reached this conclusion, our standard of review requires that we accept Plaintiffs' evidence as true and disregard MHTC's contradictory evidence. Under these circumstances, MHTC concedes that Plaintiffs' case was "arguably submissible."[2] If reasonable minds could differ on the facts, the case is "arguably submissible," and the issue becomes a jury decision. Therefore, we conclude that Plaintiffs made a submissible case.

The trial court did not err in denying MHTC's motions for directed verdict and judgment notwithstanding the verdict. Point I lacks merit.

MHTC's second point claims the trial court erred in allowing the introduction of evidence of 26 other accidents which had occurred up to one mile east of the curve in question because those accidents did not bear sufficient similarity to the subject accident. MHTC contends the probative value of such evidence was outweighed by its prejudice.

 We review a trial court's decision to admit evidence of prior accidents for an abuse of discretion. *Dillman v. Missouri Highway and Transp. Comm'n,* 973 S.W.2d 510, 512 (Mo.App.1998). The trial court has broad discretion in admitting evidence of this nature. *Id.* "[I]f reasonable persons can differ about the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion." *Anglim v. Missouri Pacific R.R. Co.,* 832 S.W.2d 298, 303 (Mo. banc 1992).

 A trial court may admit evidence of prior accidents if the evidence is of an accident of like character that occurred under substantially the same circumstances and resulted from the same cause. *Hess v. Chicago, Rock Island & Pacific R.R. Co.,* 479 S.W.2d 425, 431 (Mo.1972). However, "the degree of similarity required for evidence that constitutes notice to defendant of prior similar accidents is less demanding than the similarity required for a series of prior accidents offered to show that the same accident occurred on the occasion in issue." *Stacy v. Truman Medical Center,* 836 S.W.2d 911, 926 (Mo. banc 1992).

Where the theory of recovery is negligence, any knowledge or warning that defendant had of the type of accident in

---

**2.** MHTC does not dispute that the lack of proper skid resistance on wet pavement is a dangerous condition under § 537.600.1(2) for

vehicles traveling at reasonably anticipated speeds.

which plaintiff was injured clearly aids the jury in determining whether a reasonably careful defendant would have taken further precautions under all the facts and circumstances, which include the knowledge of defendant of prior accidents.

*Id.* On the notice issue, the Supreme Court relied on the following quote from McCormick:

The proponent probably will want to show directly that the defendant had knowledge of the prior accidents, but the nature, frequency or notoriety of the incidents may well reveal that defendant knew of them or should have discovered the danger by due inspection. Since all that is required is that the previous injury or injuries be such as to call defendant's attention to the dangerous situation that resulted in the litigated accident, the similarity in the circumstances of the accidents can be considerably less than that which is demanded when the same evidence is used for one of the other valid purposes.[3]

*Id.* (quoting *McCormick on Evidence,* § 200 at 848 (4th ed.1992) (footnotes omitted)).

■ Here, the trial court allowed Plaintiffs to introduce evidence of 26 prior accidents (during wet or rainy conditions) which occurred on a 1.1 mile stretch of Highway 60 east of and including the subject curve. After this curve, the highway to the east is generally downhill for the next mile. This stretch of highway is winding and contains two 10°curves. These curves contrast with the 7°subject curve.

MHTC argued that these accidents were not substantially similar to Plaintiffs' accident and were therefore irrelevant. The trial court ruled the proffered evidence would be admitted for the "limited" purpose of showing notice.

We agree with the trial court that these accidents were admissible to show that MHTC had notice of a potential slick pavement problem on a 1.2 mile stretch of highway which included the subject curve. Certainly, Plaintiffs had the burden of proving that MHTC had actual or constructive notice of a dangerous condition. *See Kanagawa,* 685 S.W.2d at 834. We reach this conclusion based on the Supreme Court's decision in *Stacy.*

In that wrongful death case, a fire occurred in a room without a smoke detector at Truman Medical Center which resulted in the death of a patient who had been smoking in the room. 836 S.W.2d at 914–15. The Supreme Court rejected defendant's claim that evidence of a prior smoking incident was irrelevant because it was not "substantially similar." *Id.* at 926. The prior incident occurred in a room without a smoke detector as a result of a patient smoking in his room and occurred on the same floor of the hospital as the incident in question. *Id.* The Court said that the prior "incident was admissible to show the notice that defendant had of a potential smoking/fire problem." *Id.* In reaching this conclusion, the Court heavily relied on McCormick as earlier quoted in this opinion. Clearly, the Court did not demand "substantial similarity" in admitting the prior fire incident to show notice to defendant.

■ MHTC argues that "the dissimilarities in the sharpness of the curves, combinations of curve and grade, weather conditions and/or circumstances of the other incidents made them irrelevant" to the accident in question. This argument is based on a test of substantial similarity. Since Plaintiffs' evidence was admitted for the limited purpose of notice, the degree

**3.** According to McCormick, the valid purposes to admit evidence of prior accidents are (1) to prove the existence of a particular physical condition or defect, (2) to show that the defect or dangerous situation caused the injury, (3) to show the risk that defendant's conduct created, and (4) to prove that defendant had notice of the danger. *McCormick on Evidence,* § 200 at 703–07 (5th ed.1999) (footnotes omitted).

of similarity between the accident in question and the prior accidents is less demanding. The only requirement under the less demanding standard is that the previous accident "be such as to call defendant's attention to the dangerous situation that resulted in the litigated accident." *Stacy*, 836 S.W.2d at 926 (quoting *McCormick on Evidence*, § 200 at 848 (4th ed.1992)).

The curves and terrain one mile from the accident curve are akin to the two different rooms in *Stacy* where no evidence showed the fires originated in the same way. The evidence only showed that two fires took place, two weeks apart, and that patients had been smoking in rooms without smoke detectors. The dangerous condition in this case was a curve in which the pavement became slick when wet. The previous accidents called MHTC's attention to this "potential" slick pavement "problem" on a 1.1 mile stretch of highway on which the accident in question occurred.

▇▇▇ We believe reasonable minds could differ on the admissibility of the prior accidents for the purpose of showing notice in this case. Under these circumstances, we cannot convict the trial court of an abuse of discretion. Our conclusion is fortified by the knowledge that MHTC was entitled to a limiting instruction if a concern existed that the jury would consider the prior accidents for the wrong purpose. "If the evidence is admissible for one purpose but improper for other purposes, it should be received, subject to a limiting instruction, if requested." *Martin v. Durham*, 933 S.W.2d 921, 924 (Mo.App. 1996). Upon failing to seek an instruction limiting the purposes for which the evidence may be considered, a party cannot later complain that the jury considered such evidence for the wrong purpose. *Id.* MHTC's failure to seek a limiting instruction does not enhance their claim that the jury considered the prior accidents as proof that a dangerous condition existed on the subject curve. Finding no abuse of discretion, this point lacks merit.

▇▇▇ MHTC's Point III alleges the trial court erred in allowing Plaintiffs' expert, Dr. John Glennon, to give his opinion that the curve was unsafe when wet because his "opinion lacked foundation in facts and adequate data." Plaintiffs claim this alleged error is unpreserved because MHTC did not object to the question which asked Dr. Glennon for his opinion.

The record reveals the following exchange:

Q. Do you have an opinion that on the date of this wreck, opinion on whether on the day of this wreck this curve was reasonably safe?

MR. CARTWRIGHT: Your Honor, object to lack of foundation.

THE COURT: Overruled.

A. I do, yes.

Q. What's your opinion.

A. That it was unsafe during wet weather.

▇▇▇ A party who fails to object to testimony at trial fails to preserve the issue for appellate review. *Williams v. Enochs*, 742 S.W.2d 165, 168 (Mo. banc 1987). A party is not permitted to advance on appeal an objection different from that stated at trial. *Wilson v. Shanks*, 785 S.W.2d 282, 285 (Mo. banc 1990). Clearly, MHTC did not raise an objection to Glennon's opinion. In the reply brief, MHTC answers Plaintiffs' claim of unpreserved error by saying, "If MHTC did not object often enough, or at the right time, or otherwise failed to preserve its claim of error, then this Court should say so." Willingly, we accept the invitation and say that MHTC failed to preserve this claim of error.

▇▇▇ MHTC does not request plain error review. Seldom do we resort to such review in civil cases. *Coats v. Hickman*, 11 S.W.3d 798, 805 (Mo.App.1999). Therefore, we exercise our discretion under Rule

84.13(c) and decline plain error review of this issue. Point denied.[4]

The last point of MHTC asserts that the trial court erred in giving Plaintiffs' verdict-directing instructions numbered 9 and 15 because the failure to warn claims submitted in both instructions were not supported by substantial evidence.

■■■ Plaintiffs submitted their claims against MHTC on the theory of failure to warn or failure to remedy. MHTC objected to both verdict directors on the grounds that they were not supported by the evidence. Here, MHTC only alleges error in submitting on the failure to warn theory.

■■■ "The submission of an instruction with more than one assignment of negligence in the disjunctive is erroneous unless each assignment is supported by the evidence." *Elliot v. Carbo*, 928 S.W.2d 11, 13 (Mo.App.1996). Substantial evidence must be introduced to support both assignments of negligence. *Id.* Furthermore, this Court must view the evidence and inferences therefrom in the light most favorable to the submission of the instruction, and we disregard all contrary evidence and inferences. *Id.*

Considering the evidence in that light, we find the evidence was sufficient to support submission of the failure to warn claim. MHTC argues that the failure to warn submission was erroneous based on Baker's testimony that he believed the "slippery when wet" sign meant "curvy road ahead." Therefore, MHTC argues that placement of a slippery when wet sign just prior to the subject curve would not have altered Baker's driving.

Plaintiffs' evidence showed that MHTC adheres to the provisions of the Manual for Uniform Traffic Control Devices (MUTCD). Section 2C–30 of the MUTCD states:

The Slippery When Wet sign is intended for use to warn of a condition where the highway surface is extraordinarily slippery when wet. It should be located in advance of the beginning of the slippery section and at appropriate intervals on long sections of such pavement.

The only slippery when wet sign for eastbound motorists on this section of Highway 60 appeared two miles west of the subject curve. Dr. Glennon testified that the sign two miles away from the curve did not comply with the MUTCD because such a sign is required to be placed at "appropriate intervals." The witness said, "[y]ou don't just put one sign out there but you put multiple signs," to remind the drivers of the slippery conditions.

Furthermore, the slippery when wet sign two miles away from the subject curve did not contain words indicating that condition. Rather, the sign only portrayed a symbol of a car with two curving lines extending out from the rear of the car. Baker believed this sign warned only of a "curvy" road ahead. MHTC does not dispute that it could have supplemented the symbol sign with actual words stating "slippery when wet" and does not dispute that it has a duty to warn of slippery road conditions. The jury could have found the symbol sign, without any words, failed to give motorists like Baker sufficient warning of slippery conditions ahead and could have found that Baker would have heeded a warning he understood. Placement of symbol signs is akin to the placement of signs in a language not understood by every motorist.

Plaintiffs' evidence was sufficient to support a finding of failure to warn. Point IV lacks merit.

---

**4.** Under Points I, II, and III, MHTC raises numerous issues in the argument section of its brief which are not stated in the points relied on. We only address questions stated in the points relied on. *Smith v. Taylor Mor-*

*ley, Inc.*, 929 S.W.2d 918, 923 (Mo.App.1996). Issues raised in the argument portion of the brief which do not appear in the points relied on are not preserved for appellate review. *Id.*

*Plaintiffs' Appeal No. 23103*

Plaintiff's raise one allegation of trial court error on cross-appeal. They maintain the trial court erred in failing to attach postjudgment interest to the jury award based upon a misapplication of the damage cap established by § 537.610. Plaintiffs contend that § 537.610 does not operate as a limit on postjudgment interest in excess of the cap because such interest is not an element of damages, but instead serves solely to compensate for the loss of the money owed from the time of the judgment until payment. The parties acknowledge that this issue is one of first impression in Missouri.

■■■■ The doctrine of sovereign immunity provides public entities, such as MHTC, with protection from liability for negligent acts. *Williams v. Missouri Highway and Transp. Comm'n,* 16 S.W.3d 605, 609 (Mo.App.2000). Section 537.600.1(2) establishes a waiver of this immunity for injuries resulting from the operation of a motor vehicle and the condition of an entity's property. *Casey v. Chung,* 989 S.W.2d 592, 593 (Mo.App. 1998). Although the legislature waived sovereign immunity in these situations, it limited the State's exposure to damages by enacting § 537.610 which provides in pertinent part:

2. The liability of the state and its public entities on claims within the scope of sections 537.600 to 537.650, shall not exceed ... one hundred thousand dollars for any one person in a single accident or occurrence....

Because the statute is silent as to whether or not postjudgment interest applies to such awards, the issue is one of statutory construction. Sovereign immunity is the rule rather than the exception. *Browning v. White,* 940 S.W.2d 914, 919 (Mo.App. 1997). Accordingly, we must strictly construe statutory provisions that waive sovereign immunity. *Id.*

In the instant case, the jury awards exceeded the $100,000 cap imposed by § 536.610.2. Thereafter, the trial court granted MHTC's Alternative Motion to Amend Judgment to reduce the judgment against MHTC to $100,000 for the personal injury claim and $100,000 for the wrongful death claim based upon the liability cap imposed by § 537.610. At the same time, the court denied Plaintiffs' request to attach prejudgment interest and postjudgment interest to the amended amounts.

The parties agree that the trial court properly reduced the amount of the judgment in excess of the statutory cap. Plaintiffs also concede that they are not entitled to prejudgment interest because such interest is awarded on the theory that it is necessary to give full compensation for the loss sustained and is considered a part of the judgment for damages. *See Greene County v. State,* 926 S.W.2d 701, 704 (Mo. App.1996); *Green Acres Enterprises., Inc. v. Freeman,* 876 S.W.2d 636, 641 (Mo.App. 1994). Because the damage awards meet the statutory maximum, there is no question that the § 537.610 cap applied to prohibit Plaintiffs from collecting prejudgment interest. *Schumann v. Missouri Highway and Transp. Comm'n,* 912 S.W.2d 548, 552 (Mo.App.1995).

■■■■ The question remains whether § 537.610 operates to bar an award of postjudgment interest where the money judgment entered against the State already reaches the permissible amount allowed by the statute. The primary rule of statutory interpretation requires this Court to ascertain the intent of the legislature by considering the language used while giving the words used in the statute their plain and ordinary meaning. *Hamrick v. Affton School Dist. Bd. of Educ.,* 13 S.W.3d 678, 680 (Mo.App.2000). "We must construe the statute in light of the purposes the legislature intended to accomplish and the evils it intended to cure." *Id.* This Court must avoid interpretations that are unjust, absurd, or unreasonable. *Id.* Accordingly, we consider the statute in the context of the entire statutory scheme

on the same subject in order to discern legislative intent. *Jackson County Bd. of Election Comm'rs v. Paluka*, 13 S.W.3d 684, 690 (Mo.App.2000).

MHTC emphasizes Missouri's rule of strict statutory construction for statutes waiving sovereign immunity. *Wellner v. Director of Revenue*, 16 S.W.3d 352, 354 (Mo.App.2000). MHTC then argues that because the statute does not expressly exempt postjudgment interest from the cap, the legislature intended to limit it in such cases. Several states have applied strict construction to their sovereign immunity statutes and have reached this result.

Massachusetts, North Carolina, and Oklahoma have interpreted their sovereign immunity statutes to prohibit an award of postjudgment interest above the statutory cap. *See Onofrio v. Department of Mental Health*, 411 Mass. 657, 584 N.E.2d 619, 620 (1992); *McGee v. North Carolina Dept. of Revenue*, 135 N.C.App. 319, 520 S.E.2d 84, 88 (1999); *Belletini v. State ex rel. Dept. of Transp.*, 920 P.2d 1067, 1071 (Okl.App. 1996). Each of these states strictly construed its sovereign immunity statute and concluded that a plaintiff could not collect postjudgment interest in an amount above the statutory cap without the express permission of the legislature.

The sovereign immunity statute at issue in Massachusetts specifically barred prejudgment interest but was silent as to postjudgment interest. *Onofrio*, 584 N.E.2d at 620. The Supreme Court of Massachusetts noted that "waivers of sovereign immunity must be expressed by the terms of the statute or appear by necessary implication from them . . . ." *Id.* Based upon the State's strict rules of statutory construction and the statute's silence on the matter, the Court concluded there can be no imposition of postjudgment interest on any judgment against the State, even in cases where the judgment amount fell below the statutory limit. *Id.*

The Court of Appeals of North Carolina also used rules of strict construction and found no indication that the legislature intended to allow the imposition of either prejudgment or postjudgment interest against the state where the sovereign immunity statute was silent on the subject. *McGee*, 520 S.E.2d at 88. With limited discussion on the subject, the Court of Appeals of Oklahoma concluded that the sovereign immunity statute did not allow the imposition of postjudgment interest in excess of the cap. *Belletini*, 920 P.2d at 1071.

In each of these cases, the court interpreted the sovereign immunity statute's silence as to the effect of the cap on postjudgment interest as evidence of the legislature's intent to deny such recovery. We are not persuaded that is the case in Missouri.

Although § 537.610 is silent as to postjudgment interest, § 408.040.1 provides for interest at the rate of nine per cent per annum "on all money due upon any judgment or order of any court." The rationale behind the enactment of § 408.040.1 is to provide an incentive "for prompt payment of money obligations and to compensate the [judgment] creditor when the [judgment] debtor fails to do so." *Wulfing v. Kansas City Southern Indus., Inc.*, 842 S.W.2d 133, 160 (Mo.App.1992). In other words, unlike prejudgment interest, postjudgment interest is awarded as a penalty for delayed payment of the judgment rather than as compensation for damages. *Green Acres*, 876 S.W.2d at 641; *Boatmen's First Nat'l Bank v. Bogina Petroleum*, 794 S.W.2d 703, 705 (Mo.App. 1990).

Based upon the distinctions between prejudgment interest and postjudgment interest, and the rationale behind the enactment of § 408.040.1, Plaintiffs urge this Court to determine that postjudgment interest may attach to damage awards even where the total would exceed the $100,000 limit established by § 537.610. Although no Missouri court has addressed this issue, courts in Kansas, Maryland, Minnesota, and Texas, other jurisdictions with similar

sovereign immunity caps, have concluded the limits do not apply to postjudgment interest on damage awards against the State. *See Wilmer v. Board of County Comm'rs,* 916 F.Supp. 1079, 1080–81 (D.Kan.1996); *State Highway Admin. v. Kim,* 353 Md. 313, 726 A.2d 238, 246 (1999); *Lienhard v. State,* 431 N.W.2d 861, 866 (Minn.1988); *University of Texas Med. Branch at Galveston v. York,* 808 S.W.2d 106, 112 (Tex.App.1991) (reversed on other grounds at 871 S.W.2d 175 (Tex. 1994)). We find these decisions persuasive.

The Court of Appeals of Maryland presents the most comprehensive discussion of the issue in *Kim.* 726 A.2d at 240. The plaintiff in *Kim* received a personal injury verdict for $650,000 against the Maryland State Highway Administration. *Id.* The Maryland sovereign immunity statute imposes a $50,000 cap on personal injury claims. *Id.* at 240 n. 3. The trial court reduced the plaintiff's damage award to match the cap, but also imposed postjudgment interest. *Id.* at 240. On appeal, the Court held that although the sovereign immunity statute does not specifically provide for postjudgment interest above the cap, the State may be held liable for such interest. *Id.* at 245.

In reaching its decision, the Court of Appeals of Maryland looked at the difference between prejudgment and postjudgment interest. The Court acknowledged that prejudgment interest constitutes a part of the damages while postjudgment interest compensates the successful plaintiff for the loss of income on money owed him. *Id.* at 246. The Court then noted that the legislature did not choose to "exclude expressly the payment of postjudgment interest from the waiver of sovereign immunity...." *Id.* at 249. The Court emphasized that "[h]ad the State paid the judgment on the date the verdict was rendered, its responsibility for the payment of interest would not have arisen." *Id.* at 246.

Relying heavily upon authority from other states, the Court concluded that the State must be accountable for postjudgment interest in order to prevent treating it differently than other judgment debtors. *Id.* at 247.

Similarly, in *Lienhard,* the Minnesota Supreme Court noted that prejudgment interest is considered a part of a damage award. 431 N.W.2d at 866. The Court distinguished postjudgment interest, emphasizing that it is not a part of the tort claim, and concluded that the State is liable to the same extent as any private judgment debtor without benefit of the sovereign immunity cap. *Id.* The Court reasoned that requiring the State to pay interest on a damage award "imposes on the State the same financial pressure which encourages private persons to avoid litigation and to pay judgments promptly." *Id.*

In *Wilmer,* the federal court charged with interpreting the Kansas sovereign immunity statute reached the same conclusion. 916 F.Supp. at 1081. The court cited *Lienhard* in support of its conclusion that an award of postjudgment interest encourages governmental entities to promptly pay judgments against them. *Id.* The court then stated:

> In our judgment the loss of the use of money, whether occasioned by the delay or default of an ordinary citizen or of the state ... ought to be compensated.... We see no justice in a rule which permits the state to retain for its use without interest money which it was legally obligated to pay.

*Id.* (quoting *Shapiro v. Kansas Public Employees Retirement System,* 216 Kan. 353, 532 P.2d 1081 (1975)).

The Court of Appeal of Texas has also concluded that its sovereign immunity cap does not apply to postjudgment interest based upon the differences between prejudgment interest and postjudgment interest. *York,* 808 S.W.2d at 112. The court noted that unlike prejudgment interest,

**676**

postjudgment interest is not an element of damages in a personal injury case, but instead compensation for the use or detention of money owed from the time of judgment. *Id.* The court then stated that the State's obligation to pay is the same as that of any other judgment debtor and the sovereign immunity statute does not permit the State to withhold payment after the judgment is established. *Id.* The court concluded that to deny postjudgment interest would provide the State and its entities with no incentive to pay the money owed. *Id.*

In each of the foregoing cases, the conclusion that the sovereign immunity statute did not preclude the imposition of postjudgment interest above the cap turned upon the characterization of postjudgment interest as compensation for the use of money owed rather than as part of the underlying tort claim. Each of the cases also emphasized that the incentive to pay judgments promptly provided by the imposition of postjudgment interest should apply equally to the State and private judgment debtors. This reasoning is entirely consistent with Missouri courts' characterization of postjudgment interest as compensation for the use of money owed and the incentive rationale behind the enactment of § 408.040.1. *See Green Acres,* 876 S.W.2d at 641; *Boatmen's,* 794 S.W.2d at 705; *Wulfing,* 842 S.W.2d at 160.

■ Furthermore, to determine that the sovereign immunity cap in § 537.610 acts to limit postjudgment interest would entirely frustrate the purposes behind § 408.040.1, a statute in effect at the time § 537.610 was enacted. The legislature is presumed to be aware of existing declarations of law when it enacts statutes pertaining to the same subject. *Schulze v. Haile,* 840 S.W.2d 263, 266 (Mo.App.1992). We therefore presume the legislature was aware of § 408.040.1 and court decisions distinguishing postjudgment interest from damage awards when it enacted § 537.610. The legislature had the opportunity to expressly include postjudgment interest

within the sovereign immunity cap and declined to do so.

Based upon the foregoing, we determine that § 537.610 does not operate to limit postjudgment interest on damage awards against the State and its entities. Plaintiffs' point on appeal is meritorious.

That portion of the judgment which denies postjudgment interest to Plaintiffs is reversed, and the cause is remanded. Upon remand, the trial court is directed to provide for postjudgment interest to Plaintiffs in an amended judgment. In all other respects, the judgment is affirmed.

PARRISH, P.J., and SHRUM, J., concur.