

# Missouri Court of Appeals
## Southern District

### In Division

JULIA ANN RICHARDSON,     )
     )
     Plaintiff-Appellant,     )
     )
v.     )     No. SD38494
     )     Filed: August 1, 2025
ARTHUR HAWES, M.D. and     )
FERRELL-DUNCAN CLINIC, INC.,     )
     )
     Defendants-Respondents.     )

### APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

Honorable Daniel R. Wichmer, Circuit Judge

**<u>AFFIRMED</u>**

Julia Richardson (hereinafter referred to as Richardson or Plaintiff) filed suit against Dr. Arthur Hawes (Dr. Hawes) and Ferrell-Duncan Clinic, Inc. (collectively, Defendants), alleging medical negligence in connection with a rhytidectomy ("neck lift") and an abdominoplasty ("tummy tuck"). Following a trial that included testimony from Richardson's expert, Dr. Terence Myckatyn (Dr. Myckatyn), and Defendants' expert, Dr. Timothy Fee (Dr. Fee), a jury unanimously found in favor of Defendants and against Richardson. In her sole point on appeal, she contends the trial court erred in admitting demonstrative Exhibits 224, 225, 227 and 228 during Defendants' direct examination of Dr. Fee. Because the trial court committed no error in admitting those exhibits, we affirm.

**Factual and Procedural Background**

Richardson's petition named Dr. Hawes, Lester E. Cox Medical Centers, Ferrell-Duncan Clinic, and CoxHealth as defendants.[1]  Richardson alleged that Dr. Hawes was negligent because he:

(1)  failed to properly conduct a pre-operative exam of Plaintiff to determine Plaintiff's suitability for the cosmetic procedures Plaintiff desired,

(2)  failed to identify Plaintiff's physical conditions that were not conducive to a favorable surgical outcome,

(3)  failed to properly advise Plaintiff of the likelihood of achieving her desired results from the cosmetic surgery,

(4)  failed to advise Plaintiff of the probability of injury from the procedures[,] and

(5)  failed to advise Plaintiff of alternatives to the surgical procedures.

During Richardson's case-in-chief, she presented the testimony of Dr. Myckatyn, of West County Plastic Surgeons, through the admission of his previously recorded deposition. Dr. Myckatyn explained that the goal of a neck lift procedure is to convert an existing "obtuse" angle of the chin and neck, to more of an "acute" angle ("cervicomental" is the applicable medical term used elsewhere in this opinion pertaining to the neck and jawline). Dr. Myckatyn observed that Richardson, however, had "thicker, denser" soft tissue around her neck, suggesting an absence of "laxity" that would make the skin "harder to move[.]" He further noted Richardson had "less projection" of her jaw and chin, which impacts the ability to narrow the cervicomental angle.  All of these could make a successful neck lift challenging.  Addressing the tummy tuck procedure, Dr. Myckatyn described Richardson's abdomen as "convex" and "protuberant" in shape.  Dr. Myckatyn suggested that, in the case

---

[1]  After the close of all evidence at trial, the trial court entered directed verdict in favor of defendants Lester E. Cox Medical Centers and CoxHealth.

of Richardson, her abdominal shape resulted from the weakness of the muscle in the abdominal wall, so that the pressure of the visceral fat underneath overcomes the opposing resistance exerted by the overlaying muscle and connective tissue. The resulting abdominal shape had little to do with subcutaneous skin and fat, thereby suggesting the absence of skin laxity typically required for a successful tummy tuck procedure. Dr. Myckatyn was not aware whether Dr. Hawes advised Richardson about these issues. He opined that the standard of care required Richardson to be so advised, and the failure to do so would have been negligent.

Dr. Fee testified remotely for the defense, disagreeing with several of Dr. Myckatyn's conclusions. During the direct examination of Dr. Fee, the following exchange occurred:

Q. [Defendants' counsel to Dr. Fee:] You had mentioned you could probably go into some websites to look at protuberant convex abdomens. I've already given a copy of this to [Richardson's] counsel, but before we put it up on the screen, have you looked at Exhibits 227 and 228 that we've given you of some side views of someone else's abdomen?

[Richardson's counsel]: Judge, I'm going to have to object. I have seen those exhibits. As they are presented, I think they contain hearsay information that would tie these – reportedly tie them to Dr. Myckatyn's website.

[Defendants' counsel]: We might want to be heard for a second.

THE COURT: Yes.

(A bench conference was held outside the hearing of the jury in open court.)

THE COURT: Go ahead.

[Defendants' counsel]: Your Honor, I had given – the Court last week had – when I said we might have some demonstrative aids after – in light of Dr. Myckatyn's depositions. I gave these demonstrative aids to [Richardson's counsel] earlier this week, and all we plan to show is that these are before and after photos on Dr. Myckatyn's website. Exhibits 227 and 228 are abdominoplasty photos that are on the website and we have their link there. And then 224 and 225 are side views of neck lifts. All we're wanting him to say is that these are convex protuberant abdomens.

3

THE COURT:  To me, it's a demonstrative[.]

[Richardson's counsel]:  Well, the problem is if – if they were cutting them out, I don't know why they have to tie them to Dr. Myckatyn's website when –

THE COURT:  Well, I don't know that they do.  I think if you just say – to the extent it's on his website, though.  It's your expert.

[Richardson's counsel]:  Well – but we can't call him to say, you know, whatever – does he identify these?

[Defendants' counsel]:  They are on their website.

[Richardson's counsel]:  Why didn't you cut them out and just use those photos?

[Defendants' counsel]:  Because your expert – the reason why is that – I could on other ones, but you don't know if –

THE COURT:  If Myckatyn did the surgery.

[Defendants' counsel]:  His West County Plastic Surgeons did.  It says – all of these are done by surgeons in their office.  I won't say they are Dr. Myckatyn's, but I will say these are on the West County Plastic Surgeons website as before and after photos.

THE COURT:  Well, [Richardson's counsel], I gave you latitude.  The objection at the time was had – had I known you were going to use visuals, and he objected to them, and I said okay –

[Richardson's counsel]:  I think he could use those, but I don't think it's proper to tie them into Dr. Myckatyn's office when we don't even know that Dr. Myckatyn was involved in these.

[Defendants' counsel]:  Well, I'm not alleging that Dr. Myckatyn did them.  I'm not even – they are on West County Plastic Surgeons website.  Whether he did them or one of his partners did, he – he is saying that because you had these you do not do these surgeries.

THE COURT:  That's him.  You haven't tied it to him.

[Defendants' counsel]:  Correct.  I'm not going to tie it to him.

THE COURT:  If I think you –

[Defendants' counsel]:  I will tie it to the company.

4

THE COURT: I think if you just say are these – these are – I understand what you're saying.

[Richardson's counsel]: I mean, it's – my position is if they were just these pictures and not tying it and saying, well, Myckatyn's office did these and – and they could use these visual aids and they could have used them in his deposition.

THE COURT: Yeah, that does beg the question. You deposed him two weeks ago; right?

[Richardson's counsel]: More than that.

[Defendants' counsel]: We deposed him a month ago, but what I deposed him on is based on the representation that he had given me all of his exhibits and given me all of his documents.

THE COURT: But those are yours.

[Defendants' counsel]: Correct, but I wouldn't have had to ask him that if he was going to be using the diagrams that were being used by [Richardson's counsel] during that deposition for the first time.

[Richardson's counsel]: You're wanting to introduce these?

[Defendants' counsel]: As demonstratives.

[Richardson's counsel]: As written?

[Defendants' counsel]: Right. To say that's a protuberant convex abdomen on the West County and – and they operated on this person. It's protuberant and they operated; obtuse cervicomental angle, they operated.

[Richardson's counsel]: Why do you need them in particular? You're trying to criticize Dr. Myckatyn and –

THE COURT: No offense, but your expert opined that he would never do it.

[Richardson's counsel]: Yeah.

THE COURT: I get it. Again, I'm going to admit them for demonstrative only.

[Defendants' counsel]: Yes, sir. Can I say – can I say West County Plastic Surgeons website? I'm not going to say Dr. Myckatyn.

THE COURT:  I think if you're identifying where you got them from.

[Richardson's counsel]:  Just so I'm clear and the record is clear for any appeal, I object to the reference to West County Plastic Surgeons because there's nothing that indicates that Dr. Myckatyn personally reviewed these or [was] involved in any of these procedures, or that he agrees with the classification provided.

THE COURT:  I think his expert is going to have to say what the shape is, so I am going to overrule – I am going to overrule your objection based on the fact that the expert is going to have to establish what type of abdomen it is, and we will let the Court of Appeals sort that out.  I will admit it as demonstrative.

[Richardson's counsel]:  Can I have a continuing objection?

THE COURT:  Yes.

(The proceedings returned to open court with the jury present.)

Thereafter, Defendants' counsel offered Exhibits 224, 225, 227 and 228 into evidence for demonstrative purposes, and the trial court admitted said exhibits subject to Richardson's continuing objection.   While examining Dr. Fee, Defendants' counsel identified each exhibit as coming from the "West County Plastic Surgeons" website and depicting "before" and "after" photographs of either neck lift or tummy tuck procedures performed on other patients.   Defendants' counsel then asked Dr. Fee, as applicable depending on the procedure involved in the exhibit, whether the person in each of the "before" pictures had an "obtuse cervicomental angle" or a "protuberant convex" abdomen.   Dr. Fee responded in the affirmative to each such question.  Dr. Fee then went on to testify that Richardson, too, had an obtuse cervicomental angle and a protuberant convex abdomen, and that it was within the standard of care and appropriate for Dr. Hawes to recommend the neck lift and tummy tuck procedures.

6

The instructions submitting Richardson's negligence theory required the jury to find that Dr. Hawes failed to inform Richardson of one or more of the following alleged risks of receiving a neck lift or tummy tuck procedure:

1. [Richardson] was unlikely to achieve her goal of a flat stomach due to [her] lack of abdominal wall tone and the amount of [her] intra-abdominal fat; or

2. [she] was a high risk of wound separation and unfavorable scarring due to her intra-abdominal pressure; or

3. [she] was at high risk of a scar with uneven contour due to a mismatch of her abdominal soft tissue thickness; or

4. [she] had a greater risk of wide scars behind her ears due to her weight and the thickness of her neck; or

5. [she] had a greater likelihood of achieving her goals if [she] lost weight and strengthened her abdominal muscles prior to the surgery[.]

The jury left to deliberate at 11:43 a.m. The jurors did not ask to see any of the trial exhibits, so none were sent to the jury room. Following deliberations, the jury returned a unanimous verdict for Defendants at 1:19 p.m. The jurors were polled, and each one affirmed his or her agreement with the verdict.

In Richardson's motion for a new trial, she contended the trial court abused its discretion in admitting the subject demonstrative exhibits because they were hearsay, and Defendants "did not establish the proper foundation to authenticate the exhibits for admission[.]" As to this second contention, Richardson explained in her suggestions in support that "Defendants did not attempt to properly authenticate the documents as being authored by Dr. Myckatyn." This appeal followed.

**Standard of Review**

A trial court has broad discretion in admitting or excluding evidence. *Moore v. Ford Motor Co.*, 332 S.W.3d 749, 756 (Mo. banc 2011). A trial court abuses its discretion only

when its ruling is clearly against the logic of the circumstances then before the court and is so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful, deliberate consideration. *Forester v. Clarke*, 334 S.W.3d 581, 582-83 (Mo. App. 2011). "Even when an evidentiary ruling is in error, this Court will not set aside the jury's verdict unless that error likely changed the outcome of the case." *Barkley v. McKeever Enters., Inc.*, 456 S.W.3d 829, 842 (Mo. banc 2015).

"The use of demonstrative evidence is a matter left to the sound discretion of the trial court." *Moore v. Missouri Pac. R. Co.*, 825 S.W.2d 839, 846 (Mo. banc 1992). To demonstrate error in the admission of demonstrative evidence, an appellant must show an abuse of discretion by the trial court and resulting prejudice to the appellant. *Feiteira v. Clark Equip. Co.*, 236 S.W.3d 54, 63 (Mo. App. 2007).

### Discussion and Decision

"Black's Law Dictionary defines 'demonstrative evidence' as '[p]hysical evidence that one can see and inspect (i.e., an explanatory aid, such as a chart, map, and some computer simulations) and that, while of probative value and usually offered to clarify testimony, does not play a direct part in the incident in question.'" *Eckelkamp v. Burlington Northern Santa Fe Ry. Co.*, 298 S.W.3d 546, 550 n.2 (Mo. App. E.D. 2009) (alternation in original); *see Black's Law Dictionary* 636 (9th ed. 2009).[2]

---

[2] A trial court has discretion "to allow or disallow requests to take to the jury room those exhibits that have been properly admitted in evidence. This discretion may be invoked even for articles admitted in evidence merely to illustrate or explain the testimony of witnesses." *Lester v. Sayles*, 850 S.W.2d 858, 863 (Mo. banc 1993). A chart used during opening statement and closing argument which contains the opinions and arguments of counsel, however, should not be admitted in evidence or sent to the jury room. *Id*. at 864; *see also Matter of Passman's Est.*, 537 S.W.2d 380, 386 (Mo. banc 1976) (this type of chart should only be marked as an exhibit for identification, but it should not be admitted in evidence).

Richardson presents one point on appeal. She contends the trial court abused its discretion by admitting Exhibits 224, 225, 227 and 228 as demonstrative exhibits for two reasons: "(1) the exhibits contained inadmissible hearsay in that the photographs from 'West County Plastic Surgeons' website postings contained 'before' and 'after' photos of patients of West County Plastic Surgeons along with a written description of the patients' conditions and their surgical procedures"; and "(2) the posts were not properly authenticated."[3] Both of these contentions miss the mark for the following reasons.

Richardson's first contention is that the subject exhibits contained inadmissible hearsay. This contention is based on the premise that Defendants intended (as demonstrated by their counsel's comments during the sidebar, quoted *supra*) to use the exhibits to imply that Dr. Myckatyn, or those in his medical group, have performed neck lifts on patients with obtuse cervicomental angles, and tummy tucks on patients with protuberant convex abdomens. This intended use relied on the hearsay statements that the exhibits were from the "West County Plastic Surgeons" website and were "before" and "after" surgical photos. *Cf. Saint Louis University v. Geary*, 321 S.W.3d 282, 291 (Mo. banc 2009) (a hearsay statement is an out-of-court statement offered for the truth of the matter asserted therein and depends on the veracity of the statement for its value).

The trial court admitted the exhibits as demonstrative aids to help explain the testimony of Defendants' expert, Dr. Fee. Richardson's narrow focus on her hearsay objection ignores that "[i]f the evidence is admissible for one purpose but improper for other purposes, it should be received, subject to a limiting instruction, if requested." *Benoit v.*

---

[3] This point alleges two separate and distinct reasons why the trial court's ruling was erroneous, rendering the point improperly multifarious. *See Spire Missouri, Inc. v. Public Service Comm'n*, 618 S.W.3d 225, 234 n.7 (Mo. banc 2021). However, we have discretion to review, *ex gratia*, multifarious points on the merits, and we elect to do so here. *See id.*

9

*Missouri Highway and Transp. Comm'n*, 33 S.W.3d 663, 671 (Mo. App. 2000) (internal citation omitted).  Richardson did not request a limiting instruction to the jury to ignore any hearsay in the exhibits.  Because she failed to do so, she "cannot later complain that the jury considered such evidence for the wrong purpose."  *Id*.  Accordingly, Richardson's first contention lacks merit.

Richardson's second contention is that the subject exhibits were not properly authenticated.  She argues that "Defendants did not lay the proper foundation to comply with Section 490.065[.]"[4]  This statute, "which governs the admissibility of expert testimony in a civil action, provides that an expert opinion must be based on information considered reasonably reliable in the subject field."  *Rinehart v. Shelter General Ins. Co.*, 261 S.W.3d 583, 592 (Mo. App. 2008).  Richardson argues that "[n]o testimony or other evidence … establish[ed] that the purported website posts on the West County Plastic Surgeons website were the type of facts or data reasonably relied upon by experts in the field in forming opinions or inferences on the subject [or that they] were 'otherwise reasonably reliable[.]'"

At trial, Richardson objected to the exhibits because:  (1) they contained hearsay; and (2) "there's nothing that indicates that Dr. Myckatyn personally reviewed these or [was] involved in any of these procedures, or that he agrees with the classification provided."[5]  Richardson's foundational contention on appeal, challenging Defendants' compliance with § 490.065, was not raised at trial.  The first time Richardson made this objection was in her

---

[4]  All statutory references are to RSMo (2016).

[5]  On appeal, Richardson does not contend that establishing Dr. Myckatyn's connection to, or agreement with, the cosmetic procedures and outcomes depicted by the subject exhibits was necessary to authenticate said exhibits.  "A question not presented in an appellant's brief will be considered abandoned on appeal and no longer an issue in the case." *Lucky v. Sears Roebuck and Co., Inc.*, 950 S.W.2d 687, 689 (Mo. App. 1997) (internal quotation marks and citation omitted).

motion for new trial. That is insufficient to preserve the issue for appeal. *See, e.g.*, ***Karr v. Kansas City Life Ins. Co.***, 702 S.W.3d 1, 43 (Mo. App. 2024) (an issue raised for the first time in a motion for new trial is not preserved for appellate review); ***Andersen v. Boggs***, 219 S.W.3d 818, 819 (Mo. App. 2007) (to preserve a point for appellate review, the point raised on appeal must be based upon the theory of the objection made at trial and as preserved in the motion for new trial). Richardson waived her foundational objection by not raising it at trial prior to the admission of the exhibits. ***Rinehart***, 261 S.W.3d at 592. Therefore, Richardson's second contention is not preserved for appellate review.

Because neither argument advanced by Richardson has merit, the trial court did not abuse its discretion in admitting Exhibits 224, 225, 227 and 228. Assuming *arguendo* that the trial court erred, our decision would not change because Richardson has failed to demonstrate how she was prejudiced. She suggests that the exhibits were used to "impeach the opinions and discredit the testimony of Dr. Myckatyn and to support the opinions of Dr. Hawes and his expert witness, Dr. Fee, through the use of the 'before and after' photos on the website." Richardson fails to explain how such an undermining of Dr. Myckatyn's testimony was accomplished. Dr. Myckatyn never testified that he would not perform a neck lift on a patient with an obtuse cervicomental angle. To the contrary, his testimony was that converting an obtuse angle to an acute angle is a goal of performing a neck lift; however, the thickness of Richardson's neck tissue and the shape of her chin made achieving that goal more difficult. While Dr. Myckatyn drew a somewhat closer connection between a protuberant convex abdomen and a lack of surgical success in the context of a tummy tuck, he never testified that he would not perform such a procedure. As Richardson freely admits elsewhere in her brief, "Dr. Myckatyn testified that the operations may occur but only after the patient is advised of the likely benefits or improvements that can be achieved, the

11

potential increased risks, and alternatives available." In sum, we fail to see how the outcome of the trial would have been different absent Defendants' use of the subject exhibits, especially in light of the jury's unanimous verdict in favor of Defendants. Richardson's point is denied.

The trial court's judgment is affirmed.


JEFFREY W. BATES, J. – OPINION AUTHOR

JENNIFER R. GROWCOCK, C.J. – CONCUR

MATTHEW P. HAMNER, J. – CONCUR