Keith L. MONIA, et al., Appellants,

v.

Lewis E. MELAHN, Director of
Insurance, Respondent.

No. 64121.

Missouri Court of Appeals,
Eastern District,
Southern Division.

April 5, 1994.

Motion for Rehearing and/or Transfer to
Supreme Court Denied May 4, 1994.

Application to Transfer Denied
June 21, 1994.

Albert C. Lowes, Cape Girardeau, for appellants.

Joseph R. McMahon, Jefferson City, for respondent.

CRIST, Presiding Judge.

Insurance licensees, Keith Monia, Tammy Monia, and USA Multiline Insurance Agency,

appeal the decision of the circuit court affirming the Administrative Hearing Commission's finding they were subject to discipline under § 375.141. We affirm.

The Department of Insurance licensed Keith Monia as an insurance agent and broker in 1984 and licensed Tammy Monia in 1987. Keith and Tammy Monia married in 1989. They are the owners of USA Multiline Insurance Agency (USA) in Cape Girardeau. Until February 20, 1991, Keith Monia was a captive agent for Bankers Life and Casualty Company (Bankers Life). A captive agent exclusively sells the policies of one company. Tammy Monia has always been an independent agent, free to sell various types of insurance policies. She was a general agent for United American Insurance Company (United American). In April of 1991, after Bankers Life terminated Keith Monia, Tammy appointed him as a subagent for United American.

This case arises out of two separate events. The first event involved the procurement of health insurance for Carlton Crain. Around May of 1990, Crain contacted Keith about obtaining health insurance. Crain had been treated for cancer in 1977, and his current policy was reaching its limits. On June 26, 1990, Keith went alone to Crain's house and told Crain he represented several insurance companies and would try to get coverage for Crain. However, at this time, Keith was a captive agent for Bankers Life. A Bankers Life application for health insurance was partially completed and Crain signed it. Keith told Crain he believed the premium would be $150 per month, with two months' premium required at the time of application. Crain gave Keith a check for $300, payable to USA, to cover any initial premium.

In mid-August 1990, Tammy forwarded a completed application for health insurance for Crain to United American. Someone other than Crain signed his signature to the application. The correct annual premium for the health insurance was $244. Tammy indicated on the transmittal sheet Crain had paid $181 and remitted the company its 40 percent ($72.40) of the payment, while retaining her 60 percent commission ($108.60).

In September of 1990, Crain obtained the insurance policy from United American. He decided the premium was too high, especially in light of the $5,000 deductible. He received a refund in October 1990.

The second event in issue involved the sale of Medicare supplemental coverage to Vivian Patterson. In May of 1990, Keith had sold Patterson a Bankers Life policy for an annual premium of $900. In April of 1991, after Bankers Life terminated Keith, he went to Patterson's home to sell her a United American policy. Patterson agreed to switch to United American after Keith reassured her the premium would be no higher than the one charged by Bankers Life. Keith prepared an application for insurance with United American and told Patterson to pay him $900 for the annual premium. Patterson gave him a check for $900. The subsequent insurance contract revealed the annual premium to be $1,023. Tammy submitted Patterson's application to United American. Even though Tammy had not personally sold the policy to Patterson, she certified the information was correct and signed it. She also stated Patterson had paid $1,023. Patterson later cancelled her policy with United American and received a full refund of her $900.

On April 14, 1992, the director of the Department of Insurance filed a complaint with the Administrative Hearing Commission (AHC) against Keith Monia, Tammy Monia, and USA. In that complaint, the director requested the AHC find cause existed for disciplinary action pursuant to § 375.141. The director specifically alleged Keith Monia had: (1) misappropriated money belonging to an insurance company or insured; (2) practiced fraud or deception in connection with an insurance contract; (3) engaged in unfair business practices; and (4) exhibited a lack of trustworthiness or competence. The director further alleged Tammy Monia had: (1) misappropriated money belonging to an insurance company or insurer; (2) practiced fraud or deception in connection with an insurance contract; (3) committed an unfair trade practice; and (4) exhibited a lack of trustworthiness and competence. It was also alleged USA committed all of the above

through its agents, Keith Monia and Tammy Monia.

A hearing was held on the complaint on April 30, 1992. Commissioner Paul R. Otto of the AHC concluded all three were subject to discipline under § 375.141.1. Specifically, it found Keith Monia had violated § 375.141.-1(10) by rebating a premium and § 375.141.-1(4) by exhibiting a lack of trustworthiness and competence. It also found Tammy Monia had violated: (1) § 375.141.1(5) by misappropriating funds from an insurance company; (2) § 375.141.1(6) in five instances of deception; and (3) § 375.141.1(4) for lack of trustworthiness and competence. It also found USA subject to discipline for the acts of both Keith Monia and Tammy Monia. In accordance with the AHC's finding, the Department of Insurance suspended Keith Monia's insurance agent and broker licenses for six months, revoked Tammy Monia's insurance agent and broker licenses, and revoked USA's insurance agency license. Appellants appealed to the Circuit Court of Cape Girardeau County, which affirmed. They now appeal to this court.

■ Appellants raise three points on appeal. Each point attacks the separate findings of the AHC as to each Appellant. On appeal from a circuit court's review of an administrative decision, we review the decision of the AHC, not the decision of the court. *Americare Systems v. Missouri DSS*, 808 S.W.2d 417, 419[1] (Mo.App.1991). Our review is limited to determining whether competent and substantial evidence supports the AHC's decision, whether it was arbitrary, or whether the AHC abused its discretion. § 536.140.2, RSMo 1986; § 621.145, RSMo 1986 (final decisions of AHC reviewed under § 536.140); *State ex rel. Bramlet v. Owsley*, 834 S.W.2d 868, 870 (Mo.App.1992). We consider the evidence presented and its reasonable inferences in the light most favorable to the AHC's decision. *Phil Crowley Steel Corp. v. King*, 778 S.W.2d 800, 802 (Mo.App. 1989). In addition, we presume the decision to be correct and give deference to the AHC's expertise and findings regarding credibility of the witnesses. *State ex rel. Sure-Way v. Div. of Transp.*, 836 S.W.2d 23,

25[2] (Mo.App.1992); *Bramlet*, 834 S.W.2d at 870.

■ In Point I, Keith Monia challenges the findings he was subject to discipline for rebating a premium and exhibiting a lack of trustworthiness and competence.

Section 375.141 allows the director of insurance to revoke or suspend the license of any insurance agent or broker whenever that licensee has "[c]ommitted unfair practices as defined in section 375.936...." § 375.141.-1(10), RSMo Supp.1993. One unfair trade practice in the insurance business is "rebates." § 375.936(9), RSMo Supp.1993. "Rebates" is defined as follows:

knowingly permitting or offering to make or making any contract of life insurance, life annuity, accident and health insurance or other insurance, or agreement as to such contract *other than is plainly expressed in the insurance contract issued thereon,* or paying or allowing, or giving or offering to pay, allow, or give, directly or indirectly, as inducement to such insurance or annuity, any rebate of premiums payable on the contract, or any special favor or advantage in the dividends or other benefits thereon, or any valuable consideration or inducement whatever not specified in the contract....

§ 375.936(9) (emphasis added). In its findings and conclusions, the AHC found Keith Monia had violated this provision by selling Vivian Patterson a policy costing $1,023 for $900. The AHC concluded Keith had knowingly made a contract of insurance on terms other than those plainly expressed in the contract.

The AHC's finding and conclusion is supported by competent and substantial evidence. Patterson testified Keith told her he could get the United American policy for her at the same cost of $900 she paid for her Bankers Life policy. However, the policy actually cost $1,023. Keith accepted a check from Patterson in the amount of $900. The ultimate insurance contract revealed the annual premium of the United American policy to be $1,023.

Keith contends the evidence reveals he clearly accepted a refrigerator from Patter-

son worth $125 in lieu of the remaining $123 she owed on the policy. However, the AHC could have discounted Keith's version of the events and determined the refrigerator was not on Patterson's premises at the time she initially bought the United American policy. The credibility of the witnesses is for the AHC to determine. *Bramlet,* 834 S.W.2d at 870.

Both Patterson and her boarder Bill Bailey testified Keith did inquire about a refrigerator some time after July 22, 1991, several months after Keith sold her the United American policy. Bill Bailey testified he did not even own the refrigerator in question until July 22, 1991. Keith argues the AHC could not have relied upon Patterson's testimony because it found her testimony to be incredible. However, to the extent her testimony is supported by Bailey's testimony, the evidence is sufficient.

■ Keith also challenges the finding he exhibited a lack of trustworthiness and competence. In its findings and conclusions, the AHC stated:

> In Count XII the Director alleges that there is cause to discipline the licenses of Keith and Tammy Monia and of USA Multiline because their conduct as alleged in Counts I through XI has '[d]emonstrated lack of trustworthiness or competence[.]' Section 375.141.1(4).
>
> We agree. The record shows that the Monias engaged in an egregiously false and deceptive course of conduct which reached its nadir with the use of a forged signature on Carlton Crain's insurance application. The Monias and USA Multiline are therefore subject to discipline under § 375.141.1(4).

Keith argues there is no factual basis for the AHC's conclusions because the AHC did not find cause to discipline Keith's license except for rebating a premium. Therefore, he avers the conclusion that he had engaged in an "egregiously false and deceptive course of conduct" is not supported by the AHC's finding he had little to do with the applications.

We disagree. The AHC specifically referred in the preceding paragraph to Keith's conduct as alleged in Counts I through XI, which includes his conduct in engaging in unfair business practices by rebating an insurance premium. This conduct alone is enough to support a finding of lack of trustworthiness or competence. In addition, other evidence supports the AHC's holding. First, evidence was presented that Keith had sold a United American policy to Bill Bailey while Keith was still a captive agent for Bankers Life. Further, while still a captive agent for Bankers Life, Keith met with Carlton Crain to discuss health insurance possibilities, even though he knew Crain had had cancer and Bankers Life would not insure him. He also told Crain he represented many insurance companies. The AHC's finding Keith is subject to discipline is supported by substantial and competent evidence. Point denied.

■ In Point II, Tammy Monia challenges the following findings: (1) she committed deception in the use of a forged signature of Carlton Crain; (2) she misappropriated money belonging to an insurance company; and (3) she practiced deception in connection with an insurance transaction.

First, Tammy argues the AHC's decision does not contain a basis for finding Crain's signature was forged because Crain admitted the signature was his own, did not find Tammy actually forged the signature, and gave no other reason she knew it was forged.

Section 375.141.1(6) allows an insurance license to be suspended or revoked wherever the licensee "[p]racticed or aided or abetted in the practice of fraud, forgery, deception, collusion or conspiracy in connection with any insurance transaction. . . ." The AHC found Tammy had deceived United American when she submitted Crain's application for insurance so that it purported to contain the signature of Crain. The AHC stated: "We do not know who forged Crain's signature on the United American application, but we infer that Tammy Monia knew that it was forged and submitted the application to United American intending the company to believe that Crain had signed it." The AHC further stated in a footnote: "The Monias contended throughout that Crain had signed the application. We find otherwise. Contrary to their assertion, not only did Crain

disavow the signature, but the questioned signature is indeed strikingly dissimilar to the genuine exemplars."

We find no error. Crain testified Keith Monia came alone to his house to discuss health insurance possibilities. The name of United American Insurance Company was never mentioned during that meeting. Crain had no contact with either Keith or Tammy until he contacted them about two months later and was told he was insured with United American. Crain further testified the signature on the United American application "does not look like any signature that I've ever wrote (sic) in my life."

Contrary to Tammy's assertion, it was not necessary for the AHC to conclude she was the actual forger of Crain's signature, but merely that she deceived United American by leading it to believe the signature was genuine, when in fact she knew it was not genuine. In light of the AHC's conclusion the signature in question is not Crain's signature, and the evidence that Tammy completed the United American application and sent it to them, the AHC may properly infer Tammy knew the signature was a forgery.

■ Second, Tammy contends the AHC failed to set out a clear basis for its finding she misappropriated money belonging to an insurance company in the Crain deal because the AHC "found the money belonged to Carlton Crain, which is internally inconsistent with the finding that it belonged to the United American Insurance Company...."

Section 375.141.1(5) allows an insurance license to be revoked or suspended when a licensee "[m]isappropriated or converted to his, her or its own use or illegally withheld money belonging to an insurance company, its agent, or to an insured or beneficiary...."

The language used in § 375.141 should be given its ordinary meaning without regard to the interpretation of criminal statutes. *Ballew v. Ainsworth*, 670 S.W.2d 94, 100[3] (Mo. App.1984). Misappropriation has been defined as "[t]he unauthorized, improper, or unlawful use of funds or other property for purpose other than that for which intended." *Black's Law Dictionary* 998 (6th ed. 1990);

*See also, Missouri Dept. of Ins. v. Wilkerson*, 848 S.W.2d 10, 12 (Mo.App.1992) (agent misappropriated funds by applying premium funds toward personal use or use for which it was unintended).

The AHC concluded that Tammy had misappropriated a portion of United American's 40 percent share of the $244 premium by reporting to United American Crain had only paid $181. Tammy argues she could not have misappropriated money the AHC had found belonged to Crain. However, Tammy misinterprets the AHC's conclusions. While the AHC had stated the money belonged to Crain, it did so in reference to charges against Keith for misappropriating either *Crain's* or *Bankers Life's* money by holding it from June 26, 1990 to August 14, 1990. The AHC found Keith had not misappropriated money by failing to turn it over to Bankers Life, because the money did not belong to Bankers Life. Further, holding the money for two months was not in itself misappropriation because Crain knew Keith would need time to search for an insurance company.

In contrast, a separate charge was filed against Tammy for misappropriating *United American's* money on August 14 by failing to report the correct amount paid by Crain when she submitted Crain's application for insurance with them. At that time, she failed to report Crain had paid $300 to procure insurance, and instead reported he had paid only $181. At the very least she should have reported Crain had paid a full month's premium of $244. No inconsistency exists in the AHC's findings.

Further, the AHC's conclusion Tammy misappropriated the premium funds is supported by substantial and competent evidence. Crain gave the money to Keith Monia to pay his initial premiums for health insurance. As an agent of United American, Tammy held the money paid for the premium in trust for United American once she submitted an application for Crain's insurance with them. § 375.051, RSMo 1986. Her failure to report the correct amount paid resulted in a misappropriation. *See, e.g., Matter of Whitlock*, 449 F.Supp. 1383, 1390 (W.D.Mo.1978).

∎ Finally, Tammy Monia contends the AHC erred in finding she "practiced deception in connection with an insurance transaction because the director pled and the administrative decision must find that the insurance company was damaged as a result of the misrepresentation in that no finding that such damage occurred was made."

The AHC found Tammy had committed four other acts of deception in violation of § 375.141.1(6): (1) certifying on Crain's and Patterson's applications that she had personally recorded the information they supplied and given them an outline of coverage; (2) representing to United American Crain had only paid $181; and (3) representing to United American Patterson had paid $1,023. In doing so, the AHC made the following conclusions:

> Tammy Monia deceived United American by certifying that she had personally sold policies to Crain and Patterson. It is immaterial whether she breached her contract with United American by so doing. The Director charges that she made statements that were not true; the language of the application forms—"I certify"—is such that her act of signing them was deceptive. Tammy Monia also deceived United American by misrepresenting the gross premiums received from Crain and Patterson.

The AHC further stated it would not consider whether Tammy had committed fraud because it concluded she had committed deception.

Nowhere in § 375.141 does it require the director prove damages to the insurance company before disciplining a licensee. Therefore, even though pleaded by the Department of Insurance in its complaint, a finding of damages was not necessary to find Tammy had deceived United American. United American was not seeking restitution in a tort action. Rather, the State of Missouri was seeking to discipline an insurance licensee. The purpose of § 375.141 is to protect the public from the licensee's actions. *Newman v. Melahn,* 817 S.W.2d 588, 590[2] (Mo.App.1991). Such purpose does not require damages to the insurance company before the public may need protection. Within the ordinary meaning of the word, Tammy's actions constituted deception. Point denied.

Finally, USA argues that where reversal is required for its agents, Keith and Tammy Monia, reversal is also required for findings against it. In light of our denial of Keith and Tammy's points on appeal, we also affirm the revocation of USA's license.

Judgment affirmed.

REINHARD and AHRENS, JJ., concur.