**Ronald C. STITH, Appellant,**

v.

**Scott B. LANKIN, Director, Missouri Department of Insurance, Respondent.**

**No. 25754.**

Missouri Court of Appeals, Southern District, Division One.

March 30, 2004.

Richard D. Crites, Springfield, for appellant.

Kimberly Harper–Grinston, Jefferson City, for respondent.

ROBERT S. BARNEY, Presiding Judge.

Insurance licensee, Ronald C. Stith ("Appellant"), appeals the decision of the Circuit Court of Greene County affirming the Administrative Hearing Commission's ("AHC") Findings of Fact and Conclusions of Law that the Department of Insurance established grounds to discipline Appellant's licenses for demonstrating lack of trustworthiness under section 375.141.1(4).[1]

Appellant is the owner and operator of R.C. & Associates, Inc., a licensed Missouri insurance agency. The Department of Insurance licensed Appellant as an insurance agent in 1973 and as an insurance broker in 1981. At all times relevant to

---

1. All statutory references are to RSMo 2000 unless otherwise noted.

this appeal, Appellant's licenses were in good standing in the State of Missouri.

This case arises from Appellant's dealings with John McElhaney ("McElhaney"). From January 1980 to December 1992, Appellant, acting in his capacity as an insurance agent and broker, sold McElhaney various insurance products including seven annuity policies. Appellant received a commission, fee, or other compensation for the sale of each of these insurance products.

During the period of September 1989 to June 1996, Appellant solicited and obtained approximately nine loans from McElhaney. In total, the loans amounted to $88,350.00. In October 1992, Appellant also asked McElhaney to place an annuity policy as collateral for a loan from Metropolitan National Bank to Appellant's insurance agency in the amount of $62,000.00. Metropolitan National Bank released the annuity back to McElhaney when the loan was repaid in April 1997.

In 1996, McElhaney insisted an agreement for Appellant to repay the loans be put into writing. Appellant signed a loan payment schedule with an opening balance of $27,700.00 showing he would repay that amount plus interest over a two-year period. After Appellant signed the loan payment schedule, McElhaney wrote "promissory note" and "signature" near the top of the page. Also, on February 5, 1997, Appellant offered McElhaney a two-year

promissory note for $130,000.00, payable at the rate of ten percent interest per annum.

On May 19, 1997, an employee at Appellant's insurance agency delivered stock certificates to McElhaney representing 156,000 shares in R.C. & Associates, Inc. This delivery was made after McElhaney threatened to consult an attorney about the outstanding debt owed by Appellant. While McElhaney informed Appellant that he did not want the stock certificates because he felt they were of no value, McElhaney eventually accepted the stock certificates. During the period of June 1997 to October 1997, McElhaney received payment of $55,000.00 for the redemption of 55,000 shares of stock in R.C. & Associates, Inc. Nevertheless, by Appellant's own admission, he has not repaid McElhaney the full sum of the loans. According to Appellant's brief submitted in this case, Appellant acknowledges that, as of the date of the AHC hearing, Appellant still owed McElhaney $23,350.00.

On February 7, 2001, the director of the Department of Insurance ("Director") filed a complaint with the AHC against Appellant. In that complaint, Director sought the AHC's determination that cause existed for disciplinary action pursuant to section 375.141.1.[2] Director specifically alleged Appellant had: (a) violated section 375.141.1(1) by contravening 20 CSR 700–1.140(2)(F)[3] and (b) demonstrated a lack of trustworthiness or competence.

---

**2.** Section 375.141.1 provides, in pertinent part:

The director may revoke or suspend, for such period as he or she may determine, any license of any insurance agent, agency or broker if it is determined as provided by sections 621.045 to 621.198 RSMo, that the licensee or applicant has, at any time ...: (1) In their dealings as an agent, broker or insurance agency, knowingly violated any provisions of, or any obligation imposed by,

the laws of this state, department of insurance rules and regulations ...;
\* \* \*
(4) Demonstrated lack of trustworthiness or competence[.]

**3.** 20 CSR 700–1.140(2)(F) was enacted in 1994 and provides, in pertinent part:

No licensee shall obtain or solicit for a loan or any type of ownership interest in any life insurance or accidental death policy, or any annuity product, or any other type of insur-

A hearing on the complaint was held on August 1, 2001. The AHC concluded that Appellant's licenses were not subject to discipline under section 375.141.1(1) because, at the time the loans were made, Appellant did not act in violation of the rules or regulations of the Department of Insurance.[4] However, the AHC found that due to Appellant's "insurance agent and broker relationship with McElhaney, [Appellant] acquired private information regarding McElhaney's financial holdings and status."[5] The AHC concluded that Appellant "repeatedly used that information for his own benefit to obtain loans for his insurance agency, which were not repaid in full." The AHC further determined that Appellant's licenses were subject to discipline under section 375.141.1(4) for a lack of trustworthiness based on his "pattern of using his insurance client for his own personal benefit" and his failure to repay the full amount of the loans.

The Department of Insurance held a hearing on March 22, 2002, during which counsel for the Department of Insurance submitted the records of the proceedings before the AHC to the Department of Insurance hearing officer for his consideration. Appellant's counsel requested and was given time to submit letters from Appellant's clients concerning his trustworthiness. The Department of Insurance hearing officer prepared findings of facts and conclusions of law and recommended to Director that Appellant's licenses be re-

voked. Pursuant to the AHC's and the Department of Insurance hearing officer's findings and recommendations, Director revoked Appellant's insurance agent and broker licenses. Appellant appealed to the Circuit Court of Greene County, which affirmed the findings of the AHC. Appellant now appeals to this Court.

Appellant raises four points on appeal. Succinctly stated, Appellant first claims the AHC erred in finding his licenses were subject to discipline because by his conduct he violated no statute or regulation. He also maintains there was insufficient evidence to support the finding that Appellant lacked trustworthiness. Appellant further asserts in his ensuing second and third points, respectively, that the Department of Insurance hearing officer and Director acted in violation of section 536.080 by failing to review the entire record in reaching their respective decisions. Lastly, in his final point Appellant alleges Director's order of revocation was unauthorized by law and was in excess of Director's authority.

 "On appeal from a circuit court's review of an administrative decision, we review the decision of the AHC, not the decision of the court." *Monia v. Melahn,* 876 S.W.2d 709, 711 (Mo.App.1994). The decision of the AHC will be upheld "unless its determination is: unsupported by competent and substantial evidence; arbitrary,

---

ance product, from any insured or prospective insured "if" the licensee has received any commission, fee or other compensation from the sale of the product. . . .

**4.** We note that one loan was made after the enactment of 20 CSR 700–1.140(2)(F). However, the AHC found that loan was not in violation of the regulation in that it was a cash loan and did not involve an ownership interest in an insurance product for which Appellant received compensation. This finding of the AHC is not a matter on appeal.

**5.** The AHC did not specify what private information Appellant received regarding McElhaney's finances. However, a review of the record shows that on an application for life insurance submitted to Appellant, McElhaney showed an annual income of $50,000.00, and on an application for a deferred annuity, McElhaney indicated a total annual family income of $60,000.00 and an estimated net worth of $600,000.00.

capricious or unreasonable; an abuse of discretion; or unauthorized by the law." *KV Pharm. Co. v. Mo. State Bd. of Pharmacy,* 43 S.W.3d 306, 310 (Mo. banc 2001); *see also* § 536.140. When reviewing the AHC's decision, we may not determine the weight of the evidence or substitute our discretion for that of the administrative body. *Psychcare Mgmt., Inc. v. Dept. of Social Servs.,* 980 S.W.2d 311, 312 (Mo. banc 1998). While we defer to the AHC on factual matters, questions of law are subject to independent review by this Court. *Id.* We examine the record in the light most favorable to the AHC's findings, but we will not infer findings from the final decision. *KV Pharm.,* 43 S.W.3d at 310.

Appellants first point on appeal claims the AHC erred in finding Appellant's licenses were subject to discipline for a lack of trustworthiness because there was no express law or regulation prohibiting his conduct and, furthermore, there was insufficient evidence to support the finding that Appellant demonstrated a lack of trustworthiness.[6]

As previously set out, the relevant statute provides, in pertinent part:

The director may revoke or suspend, for such period as he or she may determine, any license of any insurance agent, agency or broker if it is determined as provided by sections 621.045 to 621.198 RSMo, that the licensee or applicant has, at any time . . . :

(1) In their dealings as an agent, broker or insurance agency, knowingly violated any provisions of, or any obligation imposed by, the laws of this state, department of insurance rules and regulations . . . ;

\* \* \*

(4) Demonstrated lack of trustworthiness or competence[.]

§ 375.141.1.

█ According to Appellant's interpretation of section 375.141.1, only conduct expressly prohibited by Missouri laws and/or insurance rules and regulations could demonstrate a lack of trustworthiness. This interpretation by Appellant virtually renders section 375.141.1(4) superfluous. However, " 'it will be presumed that the legislature did not insert idle verbiage or superfluous language in a statute.' " *Civil Serv. Comm'n v. Members of Bd. of Aldermen,* 92 S.W.3d 785, 788 (Mo. banc 2003) (quoting *Hyde Park Hous. P'ship v. Dir. of Revenue,* 850 S.W.2d 82, 84 (Mo. banc 1993)).

█ Statutory construction is a question of law, and not judicial discretion. *Eckenrode v. Dir. of Revenue,* 994 S.W.2d 583, 585 (Mo.App.1999). "The primary rule of statutory interpretation requires this Court to ascertain the intent of the legislature by considering the language used while giving the words used in the statute their plain and ordinary meaning." *Benoit v. Missouri Highway & Transp. Comm'n,* 33 S.W.3d 663, 673 (Mo.App. 2000). Furthermore, " 'every word, clause, sentence, and provision of a statute' must have effect." *Civil Serv. Comm'n,* 92 S.W.3d at 788 (quoting *Hyde Park,* 850 S.W.2d at 84).

In order to give effect to each provision of the statute, section 375.141.1(4) must include some conduct beyond the scope of section 375.141.1(1), which, although not expressly prohibited by statute or regulation, nonetheless, demonstrates a lack of trustworthiness.

---

**6.** It is important to observe that Appellant raises no claim that the statute itself is impermissibly vague so as to warrant a constitutional review.

■ It has been held that lack of trustworthiness, "in itself, authorizes revocation, suspension, or refusal of an insurance agent's license." *Ballew v. Ainsworth*, 670 S.W.2d 94, 100 (Mo.App.1984). Appellant correctly states that the term "trustworthiness" as used in the applicable statute is not defined in any statute or regulation. Therefore, in interpreting the meaning of "trustworthiness" we must employ the plain and ordinary meaning of the word as used in the statute. *See Benoit*, 33 S.W.3d at 673. Trustworthy is defined as "worthy of confidence; dependable." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 1269 (10th ed.1999).

At the AHC hearing, Kathyrn Turner ("Turner"), an investigative officer for the Department of Insurance, testified that her office began investigating Appellant after receiving a complaint from McElhaney. According to Turner, McElhaney complained to the Department of Insurance that "over the course of several years [Appellant] had asked [McElhaney] for money and [McElhaney] had given [Appellant] sums of money." Turner stated the purpose of her investigation was "to determine if indeed [Appellant] had gotten these sums of money from [McElhaney]."

During Turner's investigation, she conducted a fact-finding conference with Appellant, and the transcript from that conference was entered into evidence at the AHC hearing. During this conference, Appellant told her that he had received $88,350.00 from McElhaney. However, Appellant stated more than once during the interview that he and McElhaney "had no agreements" that the funds were a loan, or even that Appellant was to repay the money.

Appellant also informed Turner that at some point McElhaney requested Appellant sign a payment schedule because McElhaney "had to have something tangible." In spite of his position that he had no agreements with McElhaney regarding repayment of the funds, Appellant related to Turner that he told McElhaney he was "glad to sign [the payment schedule] because we owe you money and we want to pay you." Appellant went on to say that he had not made any payments pursuant to the payment schedule.

Appellant further informed Turner that he issued McElhaney 156,000 shares in his company because McElhaney "wanted stock in the company, in his name." Appellant also reported he had repurchased $55,000.00 worth of the stock certificates previously given to McElhaney.[7]

At the AHC hearing, McElhaney testified that he had written several checks to Appellant over the period of time in question. McElhaney stated that each check he wrote to Appellant was the result of Appellant's request to borrow money. McElhaney also testified that Appellant promised to repay McElhaney the money that was borrowed but that he had not received full payment on his loans made to Appellant.

McElhaney further testified that after he became "more insistent or persistent" about wanting some funds repaid, Appellant first presented him with the $130,000.00 promissory note payable in two years.[8] According to McElhaney, he did

---

**7.** In his interview with Turner, Appellant did not acknowledge any outstanding debt owed to McElhaney because, according to him, there was no agreement that the funds were to be repaid. However, as previously set out, Appellant did acknowledge in his brief filed with this Court that he still owes McElhaney $23,350.00.

**8.** Appellant did not address the matter of the promissory note in his interview with Turner. As such, he did not explain why he issued a

not know how Appellant arrived at the sum of $130,000.00, but that Appellant provided the promissory note in response to McElhaney's repeated requests for something in writing. Shortly thereafter, Appellant attempted to present McElhaney with stock certificates in Appellant's insurance company, which McElhaney refused twice because he felt they had no value. According to McElhaney's testimony, Appellant informed McElhaney that the only way to cash-in the stock certificates was for an officer in the association to buy them back. McElhaney finally accepted certificates for 156,000 shares of stock in R.C. & Associates, Inc.[9] As of the date of the AHC hearing, McElhaney had redeemed 55,000 shares of stock worth $55,000.00. McElhaney testified that, in total, he had loaned Appellant $88,350.00 and had been repaid only $55,000.00.

We note that few Missouri cases have addressed the scope of section 375.141.1(4), and those that have involved violations of specifically prohibited behavior. In one case, the agents' licenses were disciplined not only for lack of trustworthiness, but also for misappropriating funds, deception, and rebating premiums, which are specifically prohibited by statute. *Monia*, 876 S.W.2d at 711; *see* §§ 375.141.1(5), (6), (10). In another case, the Department of Insurance refused to issue a license to an applicant allegedly involved in a conspiracy to commit burglary in violation of section 564.011. *Ballew*, 670 S.W.2d at 97.

■ There was ample evidence before the AHC that Appellant gained private information about McElhaney's finances during the course of his business with McElhaney and that Appellant used this information to request and obtain repeated loans from McElhaney. Additionally, the evidence shows Appellant alternatively denied and then admitted the existence of such loans from McElhaney and Appellant's obligation to repay any of the loans. He now acknowledges that he still owes McElhaney $23,350.00. Lastly, although Appellant signed a payment schedule and a promissory note, Appellant admitted he made no payments pursuant to either instrument. These factors present sufficient evidence supporting the AHC's conclusion that Appellant's licenses were subject to discipline based on Appellant's lack of trustworthiness in violation of section 375.141.1(4). *See id.* at 100. Point One is denied.

Appellant's second point on appeal alleges that the Department of Insurance hearing officer joined in rendering the final decision to revoke Appellant's licenses, but failed to consider the entire record in formulating his recommendation as required by Missouri statute. Appellant's third point on appeal argues that Director joined in rendering the final decision to revoke Appellant's licenses yet failed to consider the entire record or those portions of the record cited by the parties as required by Missouri statute. Appellant further alleges that "there was no record or statement as to what portions of the record ... [Director] accepted or rejected" in formulating his final decision.[10]

promissory note to McElhaney given his constant assertions that he had no obligation to repay McElhaney.

9. Appellant asserts in his brief submitted in this matter that the $130,000.00 promissory note was surrendered when the stock certificates were issued to McElhaney. During McElhaney's testimony, he stated that he did

not know how Appellant came to possess the promissory note. Aside from this comment, the record is devoid of any indication regarding the disposition of the promissory note.

10. Appellant does not address this portion of his point relied on in the argument portion of his brief. " 'Arguments raised in the points relied on which are not supported by argu-

Because the matters in both points address the same issue, we consider them together.

Section 536.080.2 provides, in pertinent part:

In contested cases, each official of an agency who renders or joins in rendering a final decision shall, prior to such final decision, either hear all the evidence, read the full record including all the evidence, or personally consider the portions of the record cited or referred to in the arguments or briefs.

"[T]here is a presumption that administrative decisions are made in compliance with applicable statutes." *Burgdorf v. Bd. of Police Comm'rs*, 936 S.W.2d 227, 232 (Mo.App.1996). Therefore, we will not assume that the Department of Insurance hearing officer or Director failed to comply with section 536.080.2. Rather, Appellant has the burden of demonstrating by clear and convincing evidence that the Department of Insurance hearing officer and Director failed to fulfill the statutory requirements. *Sturdevant v. Fisher*, 940 S.W.2d 21, 24 (Mo.App.1997).

Section 375.141 provides that the director of the Department of Insurance may revoke or suspend the licenses of agents or brokers based on the director's determination. Thus, the statutory scheme is such that the director is the official rendering the final decision in such cases. Here, we note that the Department of Insurance hearing officer in the instant case issued a *recommendation* to Director that Appellant's licenses should be revoked. Because the Department of Insur-

ance hearing officer was not involved in rendering the final determination, we need not determine if the Department of Insurance hearing officer read the full record. *See Gamble v. Hoffman*, 695 S.W.2d 503, 508 (Mo.App.1985) (disciplinary board recognized authority of superintendent to impose discipline "when in its findings after the first hearing it only *recommended* to the superintendent that [trooper] be fired.").[11]

Additionally, because Director rendered the final decision in this matter, Director was required to comply with section 536.080.2. Appellant claims that because no briefs were submitted for his review, Director could not have personally considered "the portions of the record cited or referred to in the arguments or briefs." § 536.080.2.

In *Burgdorf*, the officer subject to discipline argued that the Board of Police Commissioners failed to comply with section 536.080.2. *Burgdorf*, 936 S.W.2d at 232. However, the court found that the statement in the order of the commission that the findings of fact were " 'based on the evidence adduced at the aforementioned hearing' " was sufficient to satisfy the requirements of section 536.080.2. *Id.*

In the instant case, the order entered by Director reveals that "counsel for the Department of Insurance presented the decision, record and order of the Administrative Hearing Commission" to the Department of Insurance hearing officer. Indeed, the record shows counsel presented the transcripts and exhibits involved in the AHC decision to Director, which con-

---

ment in the argument portion of the brief are deemed abandoned and present nothing for appellate review.' " *Trustees of Green Trails Estates Subdivision v. Marble*, 80 S.W.3d 841, 848 (Mo.App.2002) (quoting *Real Estate Investors v. Design Group*, 46 S.W.3d 51, 59 (Mo.

App.2001)). Thus, we decline to review that portion of Appellant's point.

**11.** *Gamble* has been overruled on other grounds not pertinent to this case. *See McGhee v. Dixon*, 973 S.W.2d 847, 850 (Mo. banc 1998).

stituted the entire record in the matter. Additionally, Appellant presented letters from clients attesting to Appellant's trustworthiness.

The order rendered by Director states, "I have read the portions of the record cited by the parties." While it is true that the parties did not submit briefs in this matter, they did cite or refer to the record in their arguments before the Department of Insurance hearing officer. Given the presumption that Director acted in compliance with the applicable statute, Appellant has failed to direct this Court to any clear and convincing evidence that Director did not comply with section 536.080.2. *See Id.* Points two and three are denied.

 Appellant's fourth and final point on appeal alleges Director's order was "unauthorized by law and in excess of [Director's] authority" because Director did not identify why Director chose to revoke Appellant's licenses, rather than issue a suspension or reprimand. Appellant also maintains Director erred by not reciting what weight he gave to the evidence presented.

Appellant fails to cite to this Court any authority identifying a requirement that Director explain why the ordered discipline was selected versus other options. "'Where the appellant neither cites relevant authority nor explains why such authority is not available, the appellate court is justified in considering the points abandoned.'" *Faustlin v. Mathis,* 99 S.W.3d 546, 551 (Mo.App.2003) (quoting *Estate of Phillips v. Matney,* 40 S.W.3d 15, 19 (Mo.App.2001)). Nevertheless, we gratuitously consider the merits of Appellant's final claim of trial court error. *See* Rule 84.13(c) Missouri Court Rules 2003.

We find nothing in section 375.141 that requires Director to make a distinction explaining why the selected discipline was enforced as opposed to another form of discipline. Rather, this statutory provision specifically grants Director the power to revoke or suspend, without condition, the license of any agent or broker if Director finds a violation of the statute. § 375.141.1. We defer to Director's specialized knowledge in this matter, as Director "is better equipped to determine the gravity of the infractions and the appropriate sanction." *KV Pharm.,* 43 S.W.3d at 310. Point Four is denied.

The judgment of the Circuit Court of Greene County upholding the Findings of Fact and Conclusions of Law of the AHC is affirmed.

PREWITT, J. and GARRISON, J., concur.