**Gilbert WILSON, Plaintiff/Appellant,**

v.

**The CITY OF ST. LOUIS, Missouri, the Civil Service Commission of the City of St. Louis by Steven M. Barney, John H. Clark and Stanley Newsome, Sr., Defendants/Respondents.**

No. ED 99288.

Missouri Court of Appeals, Eastern District, Division Two.

Oct. 29, 2013.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 5, 2013.

Application for Transfer Denied Feb. 4, 2014.

502

Charles W. Bobinette, St. Louis, MO, for Plaintiff/Appellant.

Patricia A. Hageman, Christine L. Hodzic, St. Louis, MO, for Defendants/Respondents.

SHERRI B. SULLIVAN, Judge.

### Introduction

Gilbert Wilson (Appellant) seeks appellate review of a contested case whereby the Civil Service Commission (Commission) affirmed his termination of employment as a financial analyst in the City of St. Louis's (City) Office of the Comptroller Financial Reporting Section, Tax Increment Financing, and the circuit court denied his request for an evidentiary hearing. We affirm.

### Factual and Procedural Background

On February 11, 2009, Appellant forwarded an email from fellow City worker Percy Green (Green) whose subject line read, "For Your Information and Circulation!" The email included an attachment, which Appellant claims not to have opened before forwarding the email to approximately forty-five to sixty people, including coworkers. One coworker, Candice Gordon (Gordon), called Appellant to express her concern that the email was political. The attachment, in fact, solicited support for a candidate for a partisan election, to-wit: Irene J. Smith for Mayor of the City of St. Louis in the March 3, 2009, Democratic primary election, as well as three candidates for the St. Louis Board of Education. Appellant opened the email's attachment and then deleted the email. Appellant also sent the email to coworker Vanessa Carter (Carter), who told Appellant's immediate supervisor Beverly Fitzsimmons (Fitzsimmons) that he had sent an email that was against the Civil Service Rules and forwarded her a copy. Upon learning of the email, Deputy Comptroller John Zakibe (Zakibe) notified Deputy Director of Personnel Linda Thomas (Thomas). Appellant was directed to meet with Fitzsimmons and Zakibe regarding the email. At the meeting, Appellant claimed he was not aware of the contents of the attachment when he forwarded the email and believed it was religious in nature.

On February 27, 2009, Appellant was notified that he was being placed on leave pending a pre-termination hearing scheduled for March 6, 2009. The notice of pre-termination review provided him with written notice of a summary of the charges, a brief description of the offending behavior, and his rights to representation at the review. It notified him he was entitled to explain his actions, dispute any facts and/or present any mitigating circumstances. At the hearing, Appellant declined representation but responded to the allegations. Appellant testified he was not aware of the contents of the email's attachment and believed the email "was one of those emails [that] tells you to send it to a group of 20 people in a certain amount of time."

On March 6, 2009, after consultation with Zakibe, Legal Advisor and Chief of Staff Elaine Spearman (Spearman) terminated Appellant from his employment for having "distributed/forwarded through the City's Group Wise e-mail system an e-mail, which contained an attachment soliciting support for a candidate for a partisan election . . . a violation of the provisions of the Code of Conduct, Rule XV, § 2 of the Civil Service Rules, Article XVIII, § 19 of the City Charter and a memorandum issued November 19, 2007 by . . . Spearman, all pertaining to prohibited political activity and a violation of the City of St. Louis Information Systems E–Mail Policy." Appellant received a copy of the Code of Conduct for St. Louis City employees prior to February 11, 2009.

On June 17, 2009, the Commission held an evidentiary hearing on Appellant's appeal of his termination. Appellant introduced testimony and evidence of other employees charged with violating the City's prohibitions on political activity who had not been terminated. Appellant also testified he was unaware of the contents of the attachment and forwarded the email to people he thought may be interested in it because he thought it was probably religious in nature. The Commission made a finding that Appellant's testimony was not credible.

On September 10, 2010, the Commission issued its Decision including Findings of Fact and Conclusions of Law upholding Appellant's dismissal. The Commission determined Appellant's action in distributing the email and forwarding it through the City's Group–Wise email system was in violation of the City Charter, Article XVIII, Section 19; Civil Service Rule XV, Section 2; and a memorandum issued by Appellant's Appointing Authority, Darlene Green, on November 19, 2007, because the email contained an attachment soliciting support for a candidate in a partisan political election. The Commission found Appellant was dismissed from City Service for good and just cause as set forth in Rule IX, Section 3(a)(5) of the Civil Service Rules, which reads, in part, as follows:

> Employees in the competitive service may be dismissed, demoted, reduced in pay, suspended without pay, or reprimanded for just cause.
>
> (a) Appointing authorities may take one of the following disciplinary actions for just cause:
>
> · · ·
>
> (5) Dismiss the employee from City Service.

The Commission also took note of Section VIII of the Department of Personnel Administrative Regulation No. 117, which contains the following "Dismissal" exception for the Commission's general policy of progressive discipline [1]:

> Exceptions to Progressive Discipline

1. Regulation 17's general progressive discipline policy provides:
   Disciplinary actions shall be administered on a uniform basis by an appointing authority or his/her designee and should normally be expected to be progressive in nature; failure to adhere to this policy could result in disapproval of such action. The Department of Personnel shall review all proposed discipline to ensure that said proposed discipline is appropriate and progressive in nature, excluding those instances that warrant an exception to progressive discipline. Progressive discipline places an employee on notice that his or her actions will not be tolerated and, if continued, will result in more serious discipline up to and including dismissal. Each offense must be judged on a case-by-case basis and consideration given to the employee's entire work history when determining the appropriate action to take. Some offenses may be so severe that immediate suspension, reduction in pay, disciplinary demotion or dismissal is warranted.

There are some actions which are so serious that progressive discipline is inappropriate or insufficient and, therefore, immediate dismissal is warranted. Listed below are some examples of actions which may be exceptions to progressive discipline. These examples are not intended to be all inclusive

. . . .

Participation in any political activity prohibited by the Charter of the City of St. Louis or Civil Service Rules.

On October 1, 2010, Appellant filed a petition for administrative review of the Commission's decision with the circuit court and a separate motion for evidentiary hearing. On May 5, 2011, Appellant argued his motion for evidentiary hearing, which the circuit court denied on October 4, 2011. On July 23, 2012, Appellant filed an amended motion for evidentiary hearing, which merely added another allegation of a civil service worker sending a political email from a city account, as published in the *St. Louis Post–Dispatch* on April 17, 2012, and thus not available at the time of the hearing before the Commission. On October 18, 2012, the circuit court issued its order and judgment denying the motion and affirming the Commission's decision. This appeal follows. Appellant raises six points on appeal, the first five of which claim error in the Commission's decision affirming his termination of employment and the sixth which challenges the circuit court's denial of his motion for evidentiary hearing.

### Commission's Decision

Appellant first contends Article XVIII of the City Charter and Civil Service Rule XV prohibiting political emails are unconstitutional. Second, he claims the Commission misconstrued the City Charter and Civil Service Rule as prohibiting political emails. Third, he asserts his superiors committed procedural irregularities prior to the Commission's decision. Fourth, he argues he was not advised of his right to representation. Fifth, he claims the Commission did not have authority to delegate the hearing to a non-Commission member.

██ We review the decision of the Commission, not the judgment of the circuit court. *Coffer v. Wasson–Hunt*, 281 S.W.3d 308, 310 (Mo.banc 2009); Section 536.140.2.[2] We determine whether the Commission's findings are supported by competent and substantial evidence on the record as a whole, whether the decision is arbitrary, capricious, unreasonable, or involves an abuse of discretion, or whether the decision is unauthorized by law. *Coffer*, 281 S.W.3d at 310. We review the entire record, not just the evidence supporting the Commission's decisions. *Id.* Where the evidence supports opposing findings, we afford deference to the Commission's decision. *Id.* However, we do not defer to the Commission's findings on questions of law. *Vivona v. Zobrist*, 290 S.W.3d 167, 170 (Mo.App.W.D.2009).

### Point I—Constitutionality

██ City Charter Article XVIII, Section 19, prohibits persons holding a position in the classified service from taking an active part in a political campaign and distributing indicia favoring or opposing a candidate for election or nomination to a municipal public office. In its entirety, Section 19 provides:

Political activity of classified employees. No person holding a position in the classified service shall use his official authority or influence to coerce the political action of any person or body, or to interfere with any election, or shall take

**2.** All statutory references are to RSMo 2006, unless otherwise indicated.

an active part in a political campaign, or shall seek or accept nomination, election, or appointment as an officer of a political club or organization, or serve as a member of a committee of any such club or organization, or circulate or seek signatures to any petition provided for by any primary or election law, or act as a worker at the polls, or distribute badges, color, or indicia favoring or opposing a candidate for election or nomination to a public office, whether federal, state, county, or municipal. But nothing in this section shall be construed to prohibit or prevent any such person from becoming or continuing to be a member of a political club or organization or from attendance upon political meetings, from enjoying entire freedom from all interference in casting his vote, from expressing privately his opinions on all political questions, or from seeking or accepting election or appointment to public office, provided, however, that no active campaign for election shall be conducted by any employee unless he shall first resign from his position.

Similarly, Civil Service Rule XV, Section 2 [3] prohibits persons in a competitive posi-

---

3. Rule XV, Section 2, provides in its entirety: POLITICAL SPEECHES, CAMPAIGNING AND ACTIVITY:

(a) No person holding an excepted position or a competitive position in the classified service shall use his or her official authority or influence to coerce or influence the political action of a person in the competitive service, or to coerce or influence the political action of any other person. In addition, no such person shall threaten to use his official authority or influence to coerce or influence the political action of any other person. And, further, no such person shall use his office, or official time, or City facilities in an active partisan campaign.

(b) No person holding an excepted position or competitive position in the classified service shall seek or accept nomination, election or appointment as an officer of a political party elected by popular ballot. No such person shall conduct any active campaign for elective office without first resigning his or her position. However, nothing shall prevent such person from seeking or accepting election or appointment to public office, short of an active campaign for elective office. An active campaign is defined to include, among other things, the act of officially filing for election to public office and/or publicly announcing the intention to run for public office.

(c) No person in a competitive position in the classified service shall take an active part in a partisan political campaign, and no such person shall take vacation leave or a leave of absence to work on political campaigns in the manner herein prohibited. An active part is defined as those activities which essentially attempt to influence voters to vote for a particular candidate or party, including serving on a campaign committee as Chairman, Treasurer, or other officer, circulating petitions provided for by any primary or election law for any candidate or party, acting as a worker at the polls or phone banks, distributing badges, bumper stickers, handbills, or other indicia favoring or opposing a candidate for election or nomination to a public office whether Federal, state, county, or municipal, or erecting signs favoring or opposing any such candidate.

(d) No person holding an excepted position in the classified service shall work on a political campaign while on duty, but shall devote the entire time to the duties of their office.

(e) Any person in a competitive position in the classified service shall have the right to become a member of a political club or organization, and to attend political meetings, and to freely express his or her opinions, short of expressions designed to influence others to cast their vote in a certain way in a partisan election. Such expressions by the employee may include opinions on political questions, including the quality of a political candidate; erecting yard signs on property owned or leased by the employee; affixing bumper stickers to an automobile owned or leased by the employee, provided the automobile is not used while the employee is engaged in official duties; wearing campaign buttons so long as they are not worn while the employee is officially on duty, or making a contribution to a political campaign within existing election laws.

(f) Members of the Civil Service Commission shall comply with the rules regarding cam-

tion in the classified service from taking part in a partisan political campaign, including any attempts to influence voters to vote for a particular candidate and distributing any indicia favoring or opposing a candidate for election or nomination to a public office, including a municipal office.

These same prohibitions were at issue in *State ex inf. McKittrick ex rel. Ham v. Kirby*, 349 Mo. 988, 163 S.W.2d 990 (1942), where the relator complained they deprived civil service members of their constitutional rights. The Court stated:

> Section 19 prohibits any person in the classified service from … taking an active part in [a] political campaign, or from serving as an officer of a political club or organization, or from circulating political petitions, working at the polls, distributing badges, favoring or opposing political candidates. This section, however, carefully safeguards the rights of city employees to belong to political organizations, to cast their votes as they please and to express privately their opinions upon political questions. City employees may become candidates for public office but only after resigning their employment.

*Id.* at 995. As such, the Court found Section 19's restrictions on civil service employees do not impinge on said workers' rights to due process or free speech, or equal protection since they serve the legitimate goal of increasing efficiency in public service. *Id.* at 994–96.

██ Nor are the provisions cited by Appellant unconstitutionally overbroad and vague, failing to give him fair notice of what was prohibited. Section 19 and Rule XV are quite clear and sufficiently concise in their prohibitive language. Furthermore, Appellant's email to at least forty people, and possibly as many as sixty, was not a "private expression" on a political matter, as he contends. He claims to have been unaware of the attachment's political character or of its contents at all. Such a claim belies his assertion that by forwarding the email and its attachment he was expressing his political views to his chosen recipients. Based on the foregoing, Point I is denied.

### Point II—Misconstruction

██ Appellant claims the Commission misconstrued both the City Charter and Civil Service Rule to prohibit sending an email that had an attachment containing a political message. We disagree. Article XVIII, Section 19, of the City Charter and Civil Service Rule XV both prohibit the distribution of any indicia favoring or opposing a candidate for election or nomination to a public office. A normal construction and common understanding of the English language and its parlance would dictate that this prohibition encompasses sending an email that encourages support of a candidate for mayor in an upcoming mayoral election.

Appellant also maintains the Commission did not make a finding that Appellant *knew* the content of the attachment prior to forwarding the email. However, the Commission found Appellant's contention

---

paigning and activity in accordance with the provisions of these rules applicable to persons occupying competitive positions in the classified service.
(g) Nothing in this section, however, shall prevent an employee in the competitive service from participation in non-partisan political campaigns, including non-partisan election campaigns for school boards, bond issues, tax measures, constitutional or charter amendments, referendums, initiatives, and petitions in pursuit of such measures. (h) For the purposes of this rule, a competitive position in the classified service shall mean any position that is not excepted, whether the incumbent has received a competitive, provisional, temporary transient or limited-term appointment.

that he did not read the attachment and was therefore unaware that it advocated Irene Smith to replace Mayor Francis Slay as mayor of the City of St. Louis to be not credible. Accordingly, Point II is denied.

### Point III—Pre–Commission Procedure

■ Appellant asserts that because the Director of Personnel failed to investigate his conduct and make a report to the Commission as mandated by Civil Service Rule XV, Section 5, the Commission's decision should be reversed. Civil Service Rule XV, Section 5, provides that the Director of Personnel shall conduct an investigation into Rule XV violations when they come to his attention.[4] However, it does not provide that the Director is the *only* individual that can conduct such investigation and report. It also contains the provision "when it comes to his attention." Such provision indicates that it is one of many duties that may be, as is commonplace in all directorial and managerial capacities, delegated by the Director to someone such as the Deputy Director, as it was in this case to Deputy Director of Personnel Linda Thomas.

■ Appellant also claims since the Appointing Authority put him on forced leave pending the pre-termination hearing and then terminated him prior to the Commission's decision, the Commission's decision affirming his termination should be reversed. Under Department of Personnel

Administrative Regulation No. 117, Section VI, "Forced Leave," Appellant was required to file an appeal of his forced leave within ten calendar days of the date he was informed of the forced leave, which was February 27, 2009. Appellant did not file an appeal and thus has waived that right. In any event, Regulation No. 117, Section VI, allows the Appointing Authority to place an employee on forced leave if he may pose a threat to the worksite. Deputy Comptroller Zakibe testified that Appellant worked in an area with access to sensitive financial information that could be compromised if he became upset after he received notice of his pre-termination review. Further, Appellant's forced leave pending his pre-termination hearing was not a suspension without pay; rather, his last day of pay was his day of dismissal, March 6, 2009.

Because no procedural errors were committed by the Director of Personnel or Appointing Authority prior to the Commission's determination, Point III is denied.

### Point IV—Right to Representation

■ Appellant complains the Appointing Authority failed to advise him of his right to representation under Department of Personnel Administrative Regulation No. 143. However, Regulation No. 143 does not give non-union employees the right to representation at the investigation

---

4. Rule XV, Section 5 provides in its entirety:

VIOLATIONS; PENALTIES:

In every case where it shall come to the attention of the Director that any employee in the classified service, subject to Article XVIII and these rules, has engaged in political or other activities forbidden under these rules and Article XVIII, he shall conduct an investigation and upon the completion of the same present his findings to the Commission at its next regular meeting thereafter. The Commission, following a review of the findings, may conduct a complete investigation and

hearing; if the Commission finds that the employee has been guilty of a violation of the act and these rules, it shall order immediate dismissal of the employee, or such other disciplinary action authorized by these Rules deemed appropriate, and shall instruct the Director to so inform the Comptroller. In any case where an employee of the classified service has been coerced into taking unwanted political action by those in authority over him, he may report such circumstances directly to the Commission who will investigate and take such action as is indicated.

stage. Rather, Regulation No. 143 provides: "Covered employees may have an Employee Representative present under the circumstances described below if they so choose ..." and "[c]overed employee means any city employee within a bargaining unit represented by a union recognized by the State Board of Mediation and/or the City." Accordingly, because Appellant is not a member of a collective bargaining unit, i.e., not a union employee, he had no right to the representation he claims in this point.

Appellant was, however, advised in writing of the charges against him, given an explanation of the charges and evidence in support of them, given a full opportunity to respond to the charges and evidence at his pre-termination review, and advised of his right to have a representative present at that review. Appellant also appealed his termination to the Commission, which conducted a full evidentiary hearing where Appellant was represented by counsel.

Based on the foregoing, Point IV is denied.

### Point V—Hearing Officer

Appellant accuses the Commission of acting in excess of its authority by delegating its duty to conduct the hearing to a non-Commission member. Appellant made no objection at the time of the hearing, thereby waiving this complaint. See, e.g., *Vivona,* 290 S.W.3d at 171; *Coffer,* 281 S.W.3d at 309. In any event, Civil Service Rule XIII, Section 1(d) [5] provides that the Commission may engage a hearing officer for the purpose of conducting a hearing. Point V is therefore denied.

### Circuit Court Proceeding

### Point VI—Evidentiary Hearing

Appellant's sixth point claims error on the part of the circuit court. He complains the circuit court erred in failing to hold an evidentiary hearing under Section 536.140.4 because he alleged he had evidence showing the Commission a) failed to read the full record; b) refused to produce the report of the hearing officer and allow Appellant to comment; and c) unreasonably, arbitrarily and capriciously terminated Appellant as compared to similarly-situated employees who actively participated in partisan politics.

By statute a court may hear and consider evidence of alleged irregularities in the Commission's proceedings or unfairness not shown in the record. Section 536.140.4; *Madden v. Poplar Bluff R–1 School Dist.,* 399 S.W.3d 843, 847 (Mo.App.

5. Rule XIII, Section 1, titled "APPEALS," subsection (d) provides:

The Commission shall have power, and it shall be its duty to consider and determine any matter involved in the administration and enforcement of Article XVIII and the rules and ordinances adopted in accordance therewith that may be referred to it for decision by the Director, or on appeal by any appointing authority, employee, or taxpayer of the City, from any act of the Director or of any appointing authority ...
(d) Decision of the Commission: After hearing and/or reviewing and considering the evidence for and against the employee, the Commission shall prepare a report of its findings and conclusions of law, approving or disapproving the disciplinary action. In the case of approval, the disciplinary action shall stand as made by the appointing authority. In the case of disapproval or modification, the employee shall be restored to his or her former status or the action shall be modified as ordered by the Commission. In reviewing any appeal made under these rules, the Commission may in its discretion adjudicate the appeal based on written submissions or engage a hearing officer for the purpose of conducting a hearing with regard to said appeal. Said hearing officer shall be empowered to do all things the Commission is authorized to do in connection with such a hearing, except for rendering a decision on the appeal at issue.

S.D.2013); *Boyer v. City of Potosi*, 38 S.W.3d 430, 434 (Mo.App. E.D.2000). This language is merely permissive and does not compel the trial court to hear additional evidence. *Madden*, 399 S.W.3d at 847; *Jerry–Russell Bliss, Inc. v. Hazardous Waste Management Comm'n*, 702 S.W.2d 77, 82 (Mo.banc 1985). " 'We interfere with a trial court's refusal to take additional evidence in its review of an administrative agency decision *only* where there is an abuse of the trial court's discretion in refusing to delve further into the matter.' " *Madden*, 399 S.W.3d at 847, quoting *Nenninger v. Dep't of Soc. Servs.*, 898 S.W.2d 112, 116 (Mo.App.S.D.1995) (emphasis in original). "A trial court abuses its discretion when its ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Madden*, 399 S.W.3d at 847. If reasonable persons could differ as to the propriety of the trial court's action, there is no abuse of discretion. *Id.*

We find the circuit court did not abuse its discretion in denying an evidentiary hearing, for the following reasons.

*a) Commission's Consideration of Record*

Appellant claims the Commission failed to read the whole record of the proceedings before the hearing officer. Section 536.080.2 provides:

In contested cases, each official of an agency who renders or joins in rendering a final decision shall, prior to such final decision, either hear all the evidence, read the full record including all the evidence, or personally consider the portions of the record cited or referred to in the arguments or briefs. The parties to a contested case may by written stipulation or by oral stipulation in the record at a hearing waive compliance with the provisions of this section.

In the instant case, the Commission stated:

The Civil Service Commission, having reviewed and considered all submitted material, and being fully advised in the premises, makes and enters the following findings of fact, conclusions of law and decision.

The Commission's statement that it reviewed and considered the record of the proceedings is sufficient to satisfy the requirements of Section 536.080.2. *Stith v. Lakin*, 129 S.W.3d 912, 920 (Mo.App.S.D. 2004); *Burgdorf v. Bd. of Police Comm'rs*, 936 S.W.2d 227, 232 (Mo.App.E.D.1996).

Furthermore, we will not presume the Commission failed to comply with Section 536.080.2, but rather " 'there is a presumption that administrative decisions are made in compliance with applicable statutes.' " *Stith*, 129 S.W.3d at 920, quoting *Burgdorf*, 936 S.W.2d at 232. Appellant has the burden of demonstrating by clear and convincing evidence that the Commission failed to fulfill the statutory requirements. *Stith*, 129 S.W.3d at 920. Here, Appellant did not present clear and convincing evidence to the circuit court or to this Court that the Commission did not have the complete record before it in rendering its decision.

*b) Report of Hearing Officer*

Appellant maintains the Commission refused to produce the hearing officer's report and recommendation to Appellant for his commentary. However, Appellant cites no rule, regulation, statute or case law that requires this production or allows Appellant such an opportunity for review and comment.

Appellant was initially advised in writing of the pre-termination review, such notice providing a description of the offending

behavior, a summary of the charges, and his right to representation at the review. Appellant responded to the allegations at the pre-termination review prior to the decision to terminate him. Then Appellant had the opportunity to appeal his termination to the Commission. The hearing officer did not render the decision which ultimately terminated Appellant's employment. Rather, the hearing officer made recommendations to the Commission, which then rendered the decision, supported by its own specific findings of fact and conclusions of law. Appellant appealed these findings of fact, conclusions of law and decision to the circuit court for its review. Appellant then appealed the Commission's decision to this Court. Appellant had ample and fair opportunity to rebut the allegations and evidence in support of such allegations against him and the ultimate decision of his termination.

*c) Other Employees*

Appellant claims the Commission unreasonably, arbitrarily and capriciously terminated him *as compared to* similarly-situated employees who participated in partisan politics. The Commission's decision with regard to Appellant's actions and consequences thereof is not based upon what other employees did. Regulation No. 117 states, "*All employees* are expected to conduct themselves in accordance with department/division policies, Administrative Regulations of the Department of Personnel, Civil Service Rules and Regulations, Ordinances, the Charter of the City of St. Louis, and generally acceptable work behaviors including the City's Employee Code of Conduct." (Emphasis added.) Furthermore, Regulation No. 117 provides that "[e]ach offense must be judged on a case-by-case basis" with regard to disciplinary measures. The Commission's decision involved the exercise of discretion in light of the particular facts of Appellant's

case. Regulation No. 117 states, "Some offenses may be so severe that immediate suspension, reduction in pay, disciplinary demotion or dismissal is warranted."

The circuit court did not abuse its discretion in denying Appellant's request for an evidentiary hearing. Point VI is denied.

### Conclusion

The Commission's decision affirming Appellant's termination of employment and the circuit court's denial of an evidentiary hearing are affirmed.

ROBERT M. CLAYTON III, C.J., and LAWRENCE E. MOONEY, J., concur.